STEPHENS, Judge.
*204 Plaintiff, a city police officer, appeals from the trial court's judgment on the pleadings in favor of Defendant, his employer, foreclosing Plaintiff's claims for violation of his State constitutional rights to substantive due process and equal protection as a result of Defendant's *205 failure to comply with its own rules and policies regarding its promotion process. Because we hold that Plaintiff has alleged a valid property and liberty interest in requiring Defendant to comply with its own established promotional process, we reverse the order of the trial court.
Factual and Procedural Background
Since 2000, Plaintiff Kevin J. Tully has been employed with the Wilmington Police Department ("the WPD"), a department of Defendant the City of Wilmington. He obtained the rank of Corporal in June 2007. In 2008, Tully was assigned to the WPD's Violent Crimes Section ("the VCS"), investigating major cases involving, inter alia , alleged rape, robbery, homicide, and sexual assault. As part of the VCS, through 2014, Tully worked on more than fifty homicide cases with a one hundred percent clearance rate in those for which he served as lead investigator. In 2011, Tully was named Wilmington Police Officer of the Year, and, in 2014, he was awarded the "Public Safety Officer Medal of Valor," the highest award given to a police officer in the United States.
The events giving rise to this case began in the fall of 2011, when Tully decided to seek promotion to the rank of Sergeant, following the policies and procedures established by the WPD. The promotion process involves several phases, beginning with a written examination. According to the WPD's policy on promotions, only candidates scoring in the top 50th percentile of those taking the written examination may advance to the next phase of the promotional process. The top-scoring one-third of candidates who complete all specified phases are then placed on an eligibility list for promotion, which is then provided to the Chief of Police. The Chief of Police reviews a file on each promotion-eligible candidate, which may include, inter alia , materials regarding supervisory evaluation ratings, length of service, educational background, current position, commendations and awards, and disciplinary actions. From the candidates whose files he reviews, the Chief of Police selects officers for promotion. Finally, the Chief's selections must be approved by the City Manager.
In the fall of 2011, Tully sat for the written examination for promotion to the rank of Sergeant and thereafter was notified that he had failed it, thus barring Tully from moving forward in the promotion process. However, Tully alleges that, when he reviewed a copy of the purportedly correct answers for the written examination, he realized that several of the "correct" answers were based on outdated law, particularly regarding searches and seizures. Thus, Tully alleges that other candidates for the position of Sergeant who answered those examination questions *206 "correctly"-meaning their answers matched the *856 official test answers-and therefore advanced in the promotional process, had actually revealed an incorrect understanding of some areas of the current law in our State. Meanwhile, Tully, who actually demonstrated an understanding of the current law on those issues, was disqualified from advancing to the next phase of the WPD's promotion process.
Noting that the WPD's promotional policy provided that "[c]andidates [for promotion] may appeal any portion of the selection process[,]" Tully grieved this issue of the outdated examination answers through the WPD's internal grievance procedure. On 3 January 2012, Tully was informed by the City Manager that his grievance was denied because the examination answers were not a grievable item.
On 30 December 2014, Tully filed his complaint in this action, alleging claims for violations of his due process rights under the Equal Protection and "fruits of their own labor" clauses of the North Carolina Constitution. On 15 March 2015, the City filed its answer to the complaint, along with a motion for judgment on the pleadings pursuant to Rule of Civil Procedure 12(c). The City's motion was heard at the 8 April 2015 session of New Hanover County Superior Court, the Honorable Gary E. Trawick, Judge presiding. Following the hearing, the trial court granted the City's motion and dismissed Tully's complaint in its entirety. A written judgment dismissing the case with prejudice was entered on 1 May 2015. From that judgment, Tully timely appealed.
Discussion
On appeal, Tully argues that the trial court erred in granting the City's motion and entering judgment against Tully on the pleadings. We agree.
I. Standard of review
North Carolina Rule of Civil Procedure 12(c), provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." N.C. Gen. Stat. § 1A-1, Rule 12(c) (2015). "Judgment on the pleadings is not favored by law[,] and the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmovant." Carpenter v. Carpenter , 189 N.C.App. 755, 762, 659 S.E.2d 762, 767 (2008) (citation omitted). "A motion for judgment on the pleadings [pursuant to Rule 12(c) ] should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law ."
*207 B. Kelley Enters., Inc. v. Vitacost.com, Inc. , 211 N.C.App. 592, 593, 710 S.E.2d 334, 336 (2011) (citation and internal quotation marks omitted; emphasis added). When ruling on a motion for judgment on the pleadings, "[a]ll allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant...." Ragsdale v. Kennedy , 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) (citations omitted). "This Court reviews a trial court's grant of a motion for judgment on the pleadings de novo ." Carpenter , 189 N.C.App. at 757, 659 S.E.2d at 764 (citation omitted).
II. Tully's constitutional claims
As an initial matter, we must clarify the bases for Tully's claims that his constitutional rights have been violated. Our review of the record reveals that, both in the trial court and on appeal, the City has consistently attempted to reframe Tully's claims as assertions of a property and liberty interest in receiving a promotion , a position that, as the City accurately observes, is not supported by precedent. However, Tully's actual claim is that the City violated Tully's constitutional rights by failing to comply with its own policies and procedures regarding the promotional process . In other words, as Tully states in his reply brief, he
is not arguing that he has an absolute property interest in being promoted . Rather, he is arguing that if the government has a process for promotion of its employees, particularly law enforcement officers who are sworn to uphold and apply the law to ordinary citizens, that process cannot be completely arbitrary and irrational without running afoul of the North Carolina Constitution.
*857 (Emphasis added). Thus, before addressing the pertinent case law we find persuasive in support of Tully's position, we review the details of his claims and allegations.
In his complaint, citing Article I, section 19 of our State's Constitution (containing the "law of the land" and "Equal Protection" clauses),[1] Tully first alleged that, "[b]y denying [Tully's] promotion due to his answers on the Sergeant's test and then determining that such a reason was not grievable , the City arbitrarily and irrationally deprived [Tully] of property in violation of the law of the land, in violation of the North *208 Carolina Constitution." (Emphasis added). Similarly, citing Article I, section 1 (containing the "fruits of their own labor" clause),[2] Tully further alleged that, "[b]y denying [Tully's] promotion due to his answers on the Sergeant's test and then determining that such a reason was not grievable , the City arbitrarily and irrationally deprived [Tully] of [the] enjoyment of the fruits of his own labor, in violation of the North Carolina Constitution." (Emphasis added).
Specifically, Tully contends that the City violated his property and liberty interests in an equal and non-arbitrary promotional opportunity under Article I, sections 1 and 19 of the North Carolina Constitution by failing to comply with its own promotional policies and procedures in two respects. First, Tully alleges that the City administered a written Sergeant's examination that included questions based upon incorrect and outdated law such that, although Tully answered certain questions accurately based on the correct and existing law , those answers were marked wrong, causing Tully to fail the examination and score below the 50th percentile of candidates, thereby barring him from proceeding to the next stage of the promotional process.[3] Tully contends that the use of a Sergeant's test based on outdated and incorrect law violates specific promotional policies promulgated by the City.
The record on appeal includes a copy of a document entitled "Wilmington Police Department Policy Manual / Directive 4.11 Promotions / Effective: 02/24/2005 Revised: 07/25/2011" ("the manual").[4] The manual states that its purpose is to "establish [ ] uniform guidelines that govern promotional procedures within the Wilmington Police Department and ensure [ ] procedures used are job-related and nondiscriminatory" with "the objective of ... provid[ing] equal promotional opportunities to all members of the Police Department based on a candidate's merit, skills, *209 knowledge , and abilities...." (Emphasis added). In order to achieve this goal, per Policy A.1.c of the manual, the Chief of Police is responsible for "[c]onducting a review of the promotional process prior to each promotional opening to ensure [that ] the selection of the qualified candidates is done in a fair and equitable manner ." (Emphasis added). In addition, under Policy B.1.c of the manual, the Chief of Police must
establish screening devices, to include written examinations .... specific to the vacancy, [including p]roviding written examination instruments using both job and task analysis specific to the Wilmington Police Department or by using nationally recognized instruments. All instruments used shall have demonstrated content and *858 criterion validity ,[5] which is accomplished by contracting with qualified outside entities to develop the written testing instruments. Instruments will assess candidate's knowledge, skills and abilities as related to the promotional position . Work sample exercises will be internally validated using Wilmington Police Department subject matter experts.
(Emphasis added).
As part of his first constitutional claim, Tully has alleged that the City violated its own policies by administering a written examination based on outdated and inaccurate law such that it did not assess "a candidate's merit, skills, knowledge, and abilities." The hearing transcript makes clear that, despite the City's consistent focus on case law establishing that employees do not have a property or liberty interest in receiving a promotion , Tully's trial counsel clarified that his claims were based on the City's failure to provide a non-arbitrary promotional process in regard to the allegedly outdated test materials: "[T]o deny [Tully] his right to pursue [a promotion] based on an arbitrary test that is absolutely contrary to the public interest[,]... interfering with [his] fundamental right to the fruits of [his] own labor...." (Emphasis added).
*210 The second violation of his constitutional rights alleged by Tully concerns the City's failure to follow its own grievance policy in regard to the promotional process. Policy F.1 of the manual provides that "[c]andidates [for promotion] may appeal any portion of the selection process ...." (Emphasis added). Again, at the hearing, Tully's counsel noted that the City placed "significant emphasis on policies and their officers following policies, invit[ed] [Tully] to grieve [his allegations regarding the flawed test questions] and walk[ed] him through the process and then just walk[ed] all over him at the end and [said], well, you didn't really have a grievable item anyway...." (Emphasis added).
In sum, Tully's constitutional claims are not based upon an assertion that he was entitled to receive a promotion to the rank of Sergeant, but simply that he was entitled to a non-arbitrary and non-capricious promotional process. Tully's argument-that a government employer that fails to follow its own established promotional procedures acts arbitrarily, and thus, unconstitutionally-appears to be one of first impression in this State. However, it is supported by persuasive federal case law and is in keeping with our State's constitutional jurisprudence.
III. Analysis
Arbitrary and capricious acts by government are ... prohibited under the Equal Protection Clause[ ] of ... the North Carolina Constitution[ ]. No government shall deny any person within its jurisdiction the equal protection of the laws. The purpose of the Equal Protection Clause ... is to secure every person within the [S]tate's jurisdiction against intentional and arbitrary discrimination , whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.
Dobrowolska v. Wall , 138 N.C.App. 1, 14, 530 S.E.2d 590, 599 (2000) (citations and internal quotation marks omitted; emphasis added), disc. review allowed , 352 N.C. 588, 544 S.E.2d 778 (2000), disc. review improvidently allowed in part and appeal dismissed ex mero motu in part , 355 N.C. 205, 558 S.E.2d 174 (2002). Likewise, "irrational and arbitrary" government actions violate the "fruits of their own labor" clause. See, e.g. , Treants v. Onslow Cty. , 83 N.C.App. 345, 354, 350 S.E.2d 365, 371 (1986) (citations omitted), affirmed , 320 N.C. 776, 360 S.E.2d 783 (1987).
*859 In this light, we find highly persuasive the rule discussed and applied by the Fourth Circuit Court of Appeals in United States v. Heffner :
*211 An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down. This doctrine was announced in United States ex rel. Accardi v. Shaughnessy , 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). There, the Supreme Court vacated a deportation order of the Board of Immigration because the procedure leading to the order did not conform to the relevant regulations. The failure of the Board and of the Department of Justice to follow their own established procedures was held a violation of due process.
420 F.2d 809, 811-12 (4th Cir. 1969) ; see also Poarch v. N.C. Dep't of Crime Control & Pub. Safety , 223 N.C.App. 125, 133, 741 S.E.2d 315, 320 (2012) (citing Heffner with approval), disc. review denied , 366 N.C. 378, 735 S.E.2d 174 (2012). In Heffner , the defendant appealed after he was convicted of "two counts of wilfully furnishing to his employer ... false and fraudulent statements of federal income tax withholding exemptions" in violation of federal law. 420 F.2d at 810. The Fourth Circuit reversed the defendant's convictions, noting that the Internal Revenue Service ("IRS") had "issued instructions to all Special Agents of the Intelligence Division.... describ[ing] its procedure for protecting the Constitutional rights of persons suspected of criminal tax fraud, during all phases of its investigations[,]" but that the Special Agent who interrogated the defendant had failed to comply with those procedures. Id. at 811 (citation and internal quotation marks omitted). The Court explained that it was "of no significance that the procedures or instructions which the IRS has established [were] more generous than the [United States] Constitution requires.... [n]or ... that these IRS instructions to Special Agents were not promulgated in something formally labeled a 'Regulation' or adopted with strict regard to the [federal] Administrative Procedure Act...." Id. at 812 (citations omitted). The critical point is that the constitutional violation was demonstrated by "the arbitrariness which is inherently characteristic of an agency's violation of its own procedures ." Id. (emphasis added). Additionally, "[t]he Accardi doctrine ... requires reversal irrespective of whether a new trial will produce the same verdict." Id. at 813.
Although as noted supra , this appeal presents a matter of first impression in our State courts, courts in other jurisdictions have considered similar arguments made by government employees and have reached the same result we reach here. See, e.g. , McCourt v. Hampton , 514 F.2d 1365 (4th Cir. 1975) (applying the reasoning of Heffner where a *212 civilian employee of the United States Army Aviation Systems Command alleged his government employer acted arbitrarily in violating its own rules); Sumler v. Winston-Salem , 448 F.Supp. 519 (M.D.N.C. 1978) (citing Heffner with approval where a recreation department employee alleged his government employer acted arbitrarily in violating its own rules); Burnaman v. Bay City Indep. Sch. Dist. , 445 F.Supp. 927 (S.D. Tex. 1978) (applying the reasoning of Heffner where a public school vocational counselor alleged his government employer acted arbitrarily in violating its own rules); Bd. of Educ. v. Ballard , 67 Md.App. 235, 507 A.2d 192 (1986) (applying the reasoning of Heffner and Accardi where a public school librarian alleged her government employer acted arbitrarily in violating its own rules); Bd. of Educ. v. Barbano , 45 Md.App. 27, 411 A.2d 124 (1980) (applying the reasoning of Heffner and Accardi where a public school teacher alleged her government employer acted arbitrarily in violating its own rules). While not mandatory authority, these decisions present a convincing case supporting our adoption of the Heffner rule in this matter.
In addition, while we have found no case from our State's appellate courts applying the rule of Heffner and Accardi in the context of a government entity alleged to have failed to follow its own established procedures in a matter where, as here, that allegation is the sole basis to establish a property or liberty interest, this Court has noted this concept with approval in dictum :
*860 The parties have not cited in their briefs and we have not found a North Carolina case [that] deals with the power of an administrative agency not to follow its own rules. There have been cases in the federal courts dealing with this question. We believe the rule from these cases is that a party has the right to require an administrative agency to follow its own rules if its failure to do so would result in a substantial chance that there would be a different result from what the result would be if the rule were followed. This insures that those who appear before a board will be treated equally. We believe this rationale is sound.
Farlow v. N.C. State Bd. of Chiropractic Exam'rs , 76 N.C.App. 202, 208, 332 S.E.2d 696, 700 (1984) (citations omitted), disc. review denied and appeal dismissed , 314 N.C. 664, 336 S.E.2d 621 (1985). In Farlow , the plaintiff "appealed from a judgment ... affirm[ing] an order of the North Carolina State Board of Chiropractic Examiners [ ("the Board") ] suspending his license to practice for a period of six months[,]" arguing that the Board failed to render its decision within 90 days of the plaintiff's *213 disciplinary hearing as its rules required. Id. at 204, 207, 332 S.E.2d at 697, 699-70. This Court overruled the appellant's argument after determining that "the result was not changed because the Board did not follow its own rule[,]" and thus the Board's failure to follow its own rules was not prejudicial to the plaintiff. Id. at 208, 332 S.E.2d at 670.
While the Court in Farlow considered prejudice, whereas the Heffner and Accardi decisions explicitly held that prejudice was irrelevant, this distinction is not pertinent here where Tully's appeal is before us from a dismissal on the pleadings. We cite Farlow merely to demonstrate that this Court has previously found the "rationale ... sound" that a government entity should follow its own established procedures and rules to ensure equal treatment. See id. at 208, 332 S.E.2d at 700. In line with the reasoning discussed in Accardi , Heffner , and Farlow ,[6] we now hold that it is inherently arbitrary for a government entity to establish and promulgate policies and procedures and then not only utterly fail to follow them, but further to claim that an employee subject to those policies and procedures is not entitled to challenge that failure.[7] To paraphrase Tully, if a government entity can freely disregard its policies at its discretion, why have a test or a grievance process or any promotional policies at all?
*214 In reaching this holding, we emphasize that the questions before the trial court in ruling on the City's motion for judgment on the pleadings and now before this Court on appeal are not whether the City did violate its own promotional policies and procedures and whether Tully should prevail in this matter. Instead, the dispositive questions before us are whether Tully has sufficiently alleged claims of arbitrary and capricious action by the City in its failure to follow its own procedures *861 and whether the City has established on the pleadings "that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." See B. Kelley Enters., Inc. , 211 N.C.App. at 593, 710 S.E.2d at 336 (citation and internal quotation marks omitted). For the reasons discussed supra , we conclude that Tully has sufficiently alleged constitutional claims and that genuine issues of material fact remain to be resolved. Accordingly, to permit Tully to engage in discovery and present a forecast of evidence to support his allegations of arbitrary and capricious action in the City's failure to follow its own policies and procedures regarding promotions, we reverse the trial court's order.
REVERSED.
Judge McCULLOUGH concurs.
Judge BRYANT dissents by separate opinion.

"No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws...." N.C. Const. art. I, § 19.

"We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." N.C. Const. art. I, § 1.

As noted supra , the City's alleged use of outdated law on the examination would also have caused other applicants for promotion to receive credit for correct answers even where their answers were in reality wrong. Thus, the City's alleged use of a flawed Sergeant's examination doubly disadvantaged Tully, in that, not only was his score wrongly lowered, but other applicants' scores were wrongly raised. In light of the City's policy that only applicants in the top half of scorers could advance in the promotional process, the use of an allegedly flawed examination was highly prejudicial to Tully.

The manual was attached to the City's answer as Exhibit 1 and thus was before the trial court.

"Content validity addresses the match between test questions and the content or subject area they are intended to assess." The College https://research.collegeboard.org/services/aces/validity/handbook/evidence (last visited 25 July 2016). Board, "Criterion-related validity looks at the relationship between a test score and an outcome." Id. "The College Board is a mission-driven not-for-profit organization that connects students to college success and opportunity.... Each year, the College Board helps ... students prepare for a successful transition to college through programs and services in college readiness and college success-including the SAT and the Advanced Placement Program." See The College Board, https://www.collegeboard.org/about (last visited 25 July 2016).

While decisions interpreting the United States Constitution, like Heffner and Accardi , do not bind North Carolina courts on issues of North Carolina constitutional law, see e.g. , Evans v. Cowan , 122 N.C.App. 181, 183-84, 468 S.E.2d 575, 577 (1996), we find their reasoning highly persuasive on this matter of first impression.

Compare N.C. Dep't of Pub. Safety v. Owens , --- N.C.App. ----, 782 S.E.2d 337 (2016). In that case, the Highway Patrol placed a patrol sergeant on administrative duty during which time the Highway Patrol did not permit him "to complete the firearms training or other training which were required to maintain his credentials" and then, after the administrative duty period ended, fired the sergeant "based [in part] on ... his loss of certain credentials necessary to perform" his job duties. Id. at ----, 782 S.E.2d at 341. On appeal, this Court affirmed the reversal of the sergeant's termination, noting:
The Administrative Code may allow for an employee to be terminated without prior warning for the failure to maintain required credentials; however, an employee so terminated is entitled to relief ... where the employer-agency acts arbitrarily and capriciously in terminating him on this basis. Here, ... the Highway Patrol acted arbitrarily and capriciously in terminating [the sergeant] on the basis of loss of credentials. For instance, it was arbitrary and capricious for the Highway Patrol to prevent [the sergeant] from taking his annual firearms training (necessary to retain his credentials), though the Highway Patrol was under no disability to allow the training to take place, and then terminate [the sergeant] for his failure to complete said training.
Id. at ----, 782 S.E.2d at 342-43.