IN THE SUPREME COURT OF NORTH CAROLINA

No. 348A16

Filed 2 March 2018

KEVIN J. TULLY

v.

CITY OF WILMINGTON

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 790 S.E.2d 854 (2016), reversing a judgment entered on 1 May 2015 by Judge Gary E. Trawick in Superior Court, New Hanover County. Heard in the Supreme Court on 10 October 2017.

*Tin Fulton Walker & Owen PLLC, by S. Luke Largess and Cheyenne N. Chambers, for plaintiff-appellee.*

*Cranfill Sumner & Hartzog LLP, by Katie Weaver Hartzog, for defendant-appellant.*

*Elliot Morgan Parsonage, PLLC, by Robert M. Elliot and R. Michael Elliot, for North Carolina Advocates for Justice, amicus curiae.*

*Law Offices of Michael C. Byrne, by Michael C. Byrne, for North Carolina Fraternal Order of Police, amicus curiae.*

*Edelstein and Payne, by M. Travis Payne, for Professional Fire Fighters and Paramedics of North Carolina, amicus curiae.*

*McGuinness Law Firm, by J. Michael McGuinness; and Milliken Law, by Megan Milliken, for Southern States Police Benevolent Association and North Carolina Police Benevolent Association, amici curiae.*

HUDSON, Justice.

Here we address whether a police officer states a claim under the Constitution of North Carolina against his employer when that employer violates its own policy by

refusing to consider his appeal regarding the validity of an examination required for a promotion. Because we conclude that Plaintiff Kevin J. Tully has adequately stated a claim that his rights under Article I, Section 1 of the North Carolina Constitution were violated by the City of Wilmington (the City), we affirm in part the decision of the Court of Appeals reversing the dismissal of his claims.

**I.     Factual and Procedural History**

The following facts from Tully's complaint are taken as true for the purpose of analyzing the City's motion for judgment on the pleadings. The Wilmington Police Department (the Police Department) hired Tully in 2000 and promoted him to corporal in 2007. At the time this complaint was filed, Tully was a member of the violent crimes section and had investigated more than fifty homicides and served as lead investigator in at least 12 of those cases, which had a 100% clearance rate. Tully holds an associate's degree in Applied Science in Criminal Justice and Protective Services Technology and a bachelor's degree in Criminal Justice and has received his Advanced Police Certification from the North Carolina Criminal Justice Education and Training Standards Commission. He was named "Wilmington Police Officer of the Year" in 2011.

In October 2011, Tully sought a promotion to the rank of sergeant in the Police Department. He took a written examination, a required step in a multi-phase promotional process then in effect as set forth in the Police Department Policy

Manual (the Policy Manual), but he did not receive a passing score.[1] Tully had based his answers on the prevailing law at the time, and, after receiving a copy of the official examination answers, he discovered that the official answers were based on outdated law. Tully filed a grievance regarding this discrepancy through the City's internal grievance process but was informed in a 3 January 2012 letter from City Manager Sterling Cheatham that "the test answers were not a grievable item." A supervisor also told Tully that "[e]ven if you are correct, there is nothing that can be done."

Directive 4.11 of the Policy Manual states that "[t]his policy establishes uniform guidelines that govern promotional procedures within the Wilmington Police Department and ensures procedures used are job-related and non-discriminatory." Police Department, City of Wilmington, *Policy Manual*, Directive 4.11, ¶ I, at 1 (rev.

---

[1] Pursuant to the Policy Manual, "[t]hose candidates competing for the position of Sergeant must score in the top 50 percentile of those taking the written examination in order to advance to the next phase of the promotional process." Police Department, City of Wilmington, *Policy Manual*, Directive 4.11, ¶ III(B)(1)(d)(2), at 3 (rev. July 25, 2011). The Policy Manual also specifies that "[t]he top 1/3 of candidates whom complete all specified phases [of the promotional process] will be placed on the eligibility lists for promotions." *Id.* ¶ III(A)(2)(e), at 2. After conducting interviews, the Chief of Police may then pick a candidate from the top third list or may, after notifying all of those candidates that they will not be promoted, select a candidate in the second third. *Id.* Because Tully relied upon the Policy Manual in his complaint and the City attached it to its answer, the document may be considered at the motion for judgment on the pleadings stage. *See Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 4, 745 S.E.2d 316, 319-20 ("[A] document attached to the moving party's pleading may . . . be considered in connection with a Rule 12(c) motion [if] the non-moving party has made admissions regarding the document." (first alteration in original) (quoting *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 205, 652 S.E.2d 701, 708 (2007))), *disc. rev. denied*, 367 N.C. 223, 747 S.E.2d 543 (2013).

July 25, 2011).  Directive 4.11 also states that the Police Department is to work with the City's Human Resources Department to

> ensure that fair and professional standards are utilized for the purpose of promoting sworn police employees. . . . It is the objective of the City of Wilmington to provide equal promotional opportunities to all members of the Police Department based on a candidate's merit, skills, knowledge, and abilities without regard to age, race, color, sex, religion, creed, national origin, or disability.

*Id.* ¶ II, at 2.

Directive 4.11 explains that all examination "instruments used shall have demonstrated content and criterion validity, which is accomplished by contracting with qualified outside entities to develop the written testing instruments. Instruments will assess a candidate's knowledge, skills, and abilities as related to the promotional position." *Id.* ¶ III(B)(1)(c), at 3.  The "Grievance and Appeals" section of Directive 4.11 provides the following:

> 1. Candidates may appeal any portion of the selection process. The appeal must be made consistent with the City of Wilmington Personnel Policy on Employee Grievances.
>
> 2. If practical, re-application, re-testing, re-scoring and/or re-evaluation of candidates may be required if an error in the process is substantiated.

*Id.* ¶ III(F), at 6.

On 30 December 2014, Tully filed a complaint in the Superior Court in New Hanover County, asserting two claims under the North Carolina Constitution[2] on the ground that he "never had a true opportunity to grieve his denial of promotion based on his answers to the Sergeant's test." In his first claim, Tully asserted that the City violated Article I, Section 19 of the Constitution, which states in pertinent part that "[n]o person shall be . . . deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. Specifically, Tully's complaint asserted that he

> has a property interest in his employment with the City of Wilmington and that property interest cannot be denied or impeded without due process of law. . . . By denying [his] promotion due to his answers on the Sergeant's test and then determining that such a reason was not grievable, the City arbitrarily and irrationally deprived [him] of property in violation of the law of the land, in violation of the North Carolina Constitution.

In his second claim, Tully asserted that the City violated his rights under Article I, Section 1 of the Constitution, which states that "[w]e hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." *Id.* art. I, § 1. Specifically, Tully claimed that "[b]y denying [his] promotion due to his answers on the Sergeant's test and then determining that such a reason was not grievable, the City arbitrarily

---

[2] References to the "Constitution" in this opinion are to North Carolina's Constitution unless otherwise specified.

and irrationally deprived [him] of enjoyment of the fruits of his own labor, in violation of the North Carolina Constitution."

As a remedy for these alleged violations, Tully sought a judgment declaring that the City's decision to deny him a promotion based on the October 2011 Sergeant's examination was an unconstitutional "deprivation of [his] property interest in his employment" and of the "enjoyment of the fruits of his own labor." He also requested damages resulting from the City's allegedly unconstitutional actions.

After filing its answer, the City moved for judgment on the pleadings under Rule 12(c) of the North Carolina Rules of Civil Procedure. The City argued that the parties' pleadings established that Tully did not have a property interest that could support his claims for a violation of either Section 1 or Section 19 of Article I.[3] Following a hearing on 6 April 2015 before the Honorable Gary E. Trawick, the trial court granted the City's motion and dismissed all of Tully's claims with prejudice.

Tully appealed to the North Carolina Court of Appeals, which issued a divided opinion on 16 August 2016 reversing the trial court. *Tully v. City of Wilmington*, ___ N.C. App. ___, 790 S.E.2d 854 (2016). The majority first clarified that Tully's claims were "*not* based upon an assertion that he was entitled *to receive a promotion* to the rank of Sergeant, but simply that he was entitled *to a non-arbitrary and non-*

---

[3] The City's motion did not reference Tully's specific claim that the City's actions deprived him of enjoyment of the fruits of his labor in violation of Article I, Section 1.

*capricious promotional process*" in accordance with the rules set forth in the Policy Manual, including its appeals provision. *Id.* at ___, 790 S.E.2d at 858.

After acknowledging that this case presented an issue of first impression under North Carolina law and analyzing various federal and state cases relevant to the discussion, the Court of Appeals majority concluded that "it is inherently arbitrary for a government entity to establish and promulgate policies and procedures and then not only utterly fail to follow them, but further to claim that an employee subject to those policies and procedures is not entitled to challenge that failure." *Id.* at ___, 790 S.E.2d at 860 (emphasis omitted). The majority also stated that " 'irrational and arbitrary' government actions violate the 'fruits of their own labor' clause." *Id.* at ___, 790 S.E.2d at 858 (citing *Treants Enters. v. Onslow County*, 83 N.C. App. 345, 354, 350 S.E.2d 365, 371 (1986), *aff'd*, 320 N.C. 776, 360 S.E.2d 783 (1987)).

In a dissenting opinion, the Honorable Wanda G. Bryant relied principally upon the distinction between the government acting in its capacity as regulator and its capacity as employer, explaining that "[b]ecause the City is acting as an employer rather than as a sovereign, and is vested with the power to manage its own internal operations, Tully's pleadings—although asserting what appears to be an unfair result in a standard process—do not state a viable constitutional claim." *Id.* at ___, 790 S.E.2d at 861 (Bryant, J., dissenting). Judge Bryant noted, however, that "because our state Supreme Court has mandated that the N.C. Constitution be liberally construed, particularly those provisions which safeguard individual liberties, I would

strongly urge the Supreme Court to take a close look at this issue to see whether it is one that, as currently pled, is subject to redress under our N.C. Constitution."[4] *Id.* at ___, 790 S.E.2d at 863 (citation omitted). Tully filed a timely notice of appeal to this Court.

## II.    Standard of Review

We review de novo a trial court's order granting a motion for judgment on the pleadings under Rule of Civil Procedure 12(c). *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51, 790 S.E.2d 657, 659 (2016) (citation omitted). "The party moving for judgment on the pleadings must show that no material issue of fact exists and that he is entitled to judgment as a matter of law." *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 682, 360 S.E.2d 772, 780 (1987) (citation omitted). In considering a motion for judgment on the pleadings,

> "[a]ll well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." As with a motion to dismiss, "[t]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party." A Rule 12(c) movant must show that "the complaint . . . fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar" to a cause of action.

---

[4] We do not base our decision today upon substantive due process or equal protection, which are referenced in the Court of Appeals discussion, but rather squarely base our decision upon the constitutional provision guaranteeing the right to enjoy the fruits of one's labor. Accordingly, the dissent's and the City's reliance upon the United States Supreme Court's equal protection analysis in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 170 L. Ed. 2d 975 (2008), is inapplicable.

*CommScope Credit Union*, 369 N.C. at 51-52, 790 S.E.2d at 659-60 (alterations in original) (first quoting *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 682-83, 360 S.E.2d 772, 780 (1987); then quoting *Jones v. Warren*, 274 N.C. 166, 169, 161 S.E.2d 467, 470 (1968)).

III. Analysis

A. Article I, Section 1

The City contends that Tully's complaint failed to plead a viable cause of action under Article I, Section 1 of our Constitution, which states in pertinent part that "all persons are . . . endowed by their Creator with certain inalienable rights," including "the enjoyment of the fruits of their own labor." N.C. Const. art. I, § 1. We acknowledge that application of this constitutional provision in the present context is an issue of first impression. After careful consideration, we conclude that Tully has successfully stated a claim under Section 1 of Article I and affirm the Court of Appeals on that ground.

As we explained in *Corum v. University of North Carolina*,

> [t]he civil rights guaranteed by the Declaration of Rights in Article I of our Constitution are individual and personal rights entitled to protection against state action . . . . The Declaration of Rights was passed by the Constitutional Convention on 17 December 1776, the day before the Constitution itself was adopted, manifesting the primacy of the Declaration in the minds of the framers. The fundamental purpose for its adoption was to provide citizens with protection from the State's encroachment upon these rights. . . . The very purpose of the Declaration of Rights is to ensure that the violation of these rights is

never permitted by anyone who might be invested under
the Constitution with the powers of the State.

330 N.C. 761, 782-83, 413 S.E.2d 276, 289-90 (citing *State v. Manuel*, 20 N.C. 3 & 4 Dev. & Bat. 144 (1838)), *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992). We also noted in *Corum* that "[o]ur Constitution is more detailed and specific than the federal Constitution in the protection of the rights of its citizens" and that "[w]e give our Constitution a liberal interpretation in favor of its citizens with respect to those provisions which were designed to safeguard the liberty and security of the citizens in regard to both person and property." *Id.* at 783, 413 S.E.2d at 290 (citations omitted). We also explained that this Court "has recognized a direct action under the State Constitution against state officials for violation of rights guaranteed by the Declaration of Rights" when no other state law remedy is available. *Id.* at 783, 413 S.E.2d at 290 (citing *Sale v. State Highway & Pub. Works Comm'n*, 242 N.C. 612, 89 S.E.2d 290 (1955)); *see id.* at 783, 413 S.E.2d at 290 ("Having no other remedy, our common law guarantees plaintiff a direct action under the State Constitution for alleged violations of his constitutional freedom of speech rights." (citing *Sale*, 242 N.C. 612, 89 S.E.2d 290)); *see also Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 342, 678 S.E.2d 351, 356 (2009) ("[W]hen faced with a plaintiff who had suffered a colorable constitutional injury that could not be redressed through other means, this Court [has] allowed the plaintiff to proceed with his direct constitutional claim because the state law remedy did not apply to the facts alleged by the plaintiff."); *id.*

at 342, 678 S.E.2d at 357 (recognizing "our long-standing emphasis on ensuring redress for every constitutional injury").

This Court has previously recognized claims against government defendants rooted in the right to enjoy the fruits of one's labor. In *State v. Ballance,* in which we held that a statute regulating photographers violated Sections 1 and 19 of Article I, we explained that the "fundamental guaranties" set forth in Sections 1 and 19 "are very broad in scope, and are intended to secure to each person subject to the jurisdiction of the State extensive individual rights." 229 N.C. 764, 769, 51 S.E.2d 731, 734 (1949). In *State v. Warren* we observed that

> Section 1, Article I, of the Constitution of North Carolina guarantees to the citizens of the State "the enjoyment of the fruits of their own labor" and declares this an inalienable right.
> The basic constitutional principle of personal liberty and freedom embraces the right of the individual to be free to enjoy the faculties with which he has been endowed by his Creator, to live and work where he will, to earn his livelihood by any lawful calling, and to pursue any legitimate business, trade or vocation. This precept emphasizes the dignity, integrity and liberty of the individual, the primary concern of our democracy.

252 N.C. 690, 692-93, 114 S.E.2d 660, 663 (1960).

We have also addressed a public employee's liberty interest in pursuing her chosen profession free from unreasonable actions of her employer. In *Presnell v. Pell* a school employee sued her employer school district and certain administrators for defamation and wrongful termination after, as her complaint alleged, the school's

principal caused her to be fired based upon his false allegation that she had distributed liquor to maintenance contractors on school premises. 298 N.C. 715, 717-18, 260 S.E.2d 611, 613 (1979). Although we held that the plaintiff's at-will employment status meant that she had no cognizable *property* interest in continued employment, we explained that her

> complaint does however sketch a colorable claim that a constitutionally protected "liberty" interest may be at stake. One of the liberty interests encompassed in the Due Process Clause of the Fourteenth Amendment is the right "to engage in any of the common occupations of life," unfettered by unreasonable restrictions imposed by actions of the state or its agencies. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Truax v. Raich*, 239 U.S. 33 (1915). The right of a citizen to live and work where he will is offended when a state agency unfairly imposes some stigma or disability that will itself foreclose the freedom to take advantage of employment opportunities. *Board of Regents v. Roth*, [408 U.S. 564 (1972)]. . . .
>
> . . . The liberty interest here implicated—the freedom to seek further employment—was offended not by her dismissal alone, but rather by her dismissal based upon alleged unsupported charges which, left unrefuted, might wrongfully injure her future placement possibilities.

*Id.* at 724, 260 S.E.2d at 617. We then concluded that the plaintiff's opportunity to avail herself of a post-termination administrative hearing that could be appealed to Superior Court provided her with sufficient procedural due process to safeguard her liberty interest. *Id.* at 725, 260 S.E.2d at 617.[5]

---

[5] Here, Tully did not plead a due process claim based on a liberty interest, but only on a property interest. For that reason, we do not express any opinion as to the possible viability

More recently, in *King v. Town of Chapel Hill*, which concerned a tow truck company's challenge to a local towing ordinance, we explained that "[t]his Court's duty to protect fundamental rights includes preventing arbitrary government actions that interfere with the right to the fruits of one's own labor." 367 N.C. 400, 408-09, 758 S.E.2d 364, 371 (2014) (first citing N.C. Const. art. I, § 1; then citing *Roller v. Allen*, 245 N.C. 516, 525, 96 S.E.2d 851, 859 (1957)).

The City here correctly notes that cases involving the right to pursue one's profession free from unreasonable governmental action generally involve the government acting as regulator or sovereign rather than as an employer (with the exception of *Presnell*). Nevertheless, we are persuaded that Article I, Section 1 also applies when a governmental entity acts in an arbitrary and capricious manner toward one of its employees by failing to abide by promotional procedures that the employer itself put in place. We note that other courts have recognized the impropriety of government agencies ignoring their own regulations, albeit in other contexts. *See, e.g.*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, 98 L. Ed. 681, 687 (1954) (concluding that that Board of Immigration Appeals violated petitioner's due process rights by acting "contrary to existing valid regulations"); *United States v. Heffner*, 420 F.2d 809, 811-12 (4th Cir. 1969) ("An agency of the government must scrupulously observe rules, regulations, or procedures which it has

of such a claim in this context.

established. When it fails to do so, its action cannot stand and courts will strike it down. This doctrine was announced in [*Accardi*] . . . . [T]he doctrine's purpose [is] to prevent the arbitrariness which is inherently characteristic of an agency's violation of its own procedures."); *see also Farlow v. N.C. State Bd. of Chiropractic Exam'rs*, 76 N.C. App. 202, 208, 332 S.E.2d 696, 700 (observing that *Accardi*'s "rationale is sound"), *appeal dismissed and disc. rev. denied*, 314 N.C. 664, 336 S.E.2d 621 (1985).

Here Tully has adequately stated a claim under the portion of Article I, Section 1 safeguarding the fruits of his labor because, taking all the facts in his complaint as true, he alleges that the City arbitrarily and capriciously denied him the ability to appeal an aspect of the promotional process despite the Policy Manual's plain statement that "[c]andidates may appeal any portion of the selection process." Tully's allegations state that by summarily denying his grievance petition without any reason or rationale other than that the examination answers "were not a grievable item" despite their being a "portion of the selection process," the City ignored its own established rule.[6] Tully then alleges that in so doing, "the City arbitrarily and irrationally deprived [him] of enjoyment of the fruits of his own labor." Accordingly, we conclude that the City's actions here implicate Tully's right under Article I, Section 1 to pursue his chosen profession free from actions by his governmental

---

[6] Moreover, the alleged reason for Tully's grievance—that the sergeant's examination contained outdated law—went to the very heart of the Policy Manual's directive that "[a]ll" examination "instruments used shall have demonstrated content and criterion validity."

employer that, by their very nature, are unreasonable because they contravene policies specifically promulgated by that employer for the purpose of having a fair promotional process.

This right is not without limitation, however. Based upon our distillation of the admittedly sparse authority in this area of the law, we hold that to state a direct constitutional claim grounded in this unique right under the North Carolina Constitution, a public employee must show that no other state law remedy is available and plead facts establishing three elements: (1) a clear, established rule or policy existed regarding the employment promotional process that furthered a legitimate governmental interest; (2) the employer violated that policy; and (3) the plaintiff was injured as a result of that violation. If a public employee alleges these elements, he has adequately stated a claim that his employer unconstitutionally burdened his right to the enjoyment of the fruits of his labor.

Here the Policy Manual set forth clear rules specifying that "[c]andidates may appeal any portion of the selection process" and examination "instruments used shall have demonstrated content and criterion validity."[7] These rules serve the legitimate

---

[7] The parties dispute whether these rules are incorporated by reference into the City's Charter. Tully points to language in the "Personnel Policies" portion of the City's Charter stating that "[u]nless specifically excepted by this act, all other ordinances and policies affecting the employees of the City of Wilmington shall apply to employees under the Civil Service Act." Wilmington, N.C., Code of Ordinances art. XI, § 11.8. The City observes, however, that the City's Civil Service Act does not cover promotions within the Police Department and thus cannot incorporate by reference Directive 4.11 as that provision of the Policy Manual concerns promotions. We express no opinion on whether Directive 4.11 stands on the same footing as a duly enacted city ordinance given that the above-described rules are

governmental interest of providing a fair procedure that ensures qualified candidates move to the next stage of the promotional process. The Policy Manual itself explains that "[i]t is the objective of the City of Wilmington to provide equal promotional opportunities to all members of the Police Department based on a candidate's merit, skills, knowledge, and abilities." Second, in his complaint Tully alleges facts showing that the City violated the above rules by arbitrarily denying his appeal challenging inaccurate official examination answers. Third, Tully has sufficiently alleged an injury in that the City's arbitrary denial of his appeal meant that, if proven, the examination defects—and his flawed test score resulting from those defects—were never addressed. Tully's allegations show that the City's actions injured him by denying him a fair opportunity to proceed to the next stage of the competitive promotional process, thereby "unfairly impos[ing] [a] stigma or disability that will itself foreclose the freedom to take advantage of employment opportunities." *Presnell*, 298 N.C. at 724, 260 S.E.2d at 617 (citation omitted).

At this stage we express no opinion on the ultimate viability of Tully's claim. Accordingly, we need not speculate regarding whether Tully would likely have received the promotion had the Police Department followed its own policy. Similarly, we need not address the remedy to which Tully would be entitled if he ultimately succeeds in proving his claim. As we explained in *Corum*,

> [w]hat that remedy will require, if plaintiff is successful at

---

clear and established for purposes of this claim.

trial, will depend upon the facts of the case developed at trial. It will be a matter for the trial judge to craft the necessary relief. As the evidence in this case is not fully developed at this stage of the proceedings, it would be inappropriate for this Court to attempt to establish the redress recoverable in the event plaintiff is successful . . . .

330 N.C. at 784, 413 S.E.2d at 290-91.

### B. Article I, Section 19

The City also contends that the Court of Appeals majority erred in allowing Tully's claim under Article I, Section 19 to proceed. The law of the land clause of that provision states that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. As we explained in *Ballance*, " 'law of the land' is synonymous with 'due process of law,' a phrase appearing in the Federal Constitution and the organic law of many states." 229 N.C. at 769, 51 S.E.2d at 734 (citing*, inter alia*, *Yancey v. N.C. State Highway & Pub. Works Comm'n*, 222 N.C. 106, 22 S.E.2d 256 (1942)). "In analyzing a due process claim, we first need to determine whether a constitutionally protected property interest exists. To demonstrate a property interest under the [Constitution], a party must show more than a mere expectation; he must have a legitimate claim of entitlement." *McDonald's Corp. v. Dwyer*, 338 N.C. 445, 447, 450 S.E.2d 888, 890 (1994) (citation omitted).

Tully's complaint specifically asserted that his Article I, Section 19 claim was based upon a "property interest in his employment with the City of Wilmington" and that "[b]y denying [his] promotion due to his answers on the Sergeant's test and then determining that such a reason was not grievable, the City arbitrarily and irrationally deprived [him] of property in violation of the law of the land."

We have previously explained that a property interest in employment "can arise from or be created by statute, ordinance, or express or implied contract, the scope of which must be determined with reference to state law," *Presnell*, 298 N.C. at 723, 260 S.E.2d at 616 (citations omitted), and that "[n]othing else appearing, an employment contract in North Carolina is terminable at the will of either party," *id.* at 723-24, 260 S.E.2d at 616 (citation omitted). Moreover, "[t]he fact that plaintiff was employed by a political subdivision of the state does not itself entitle her to tenure, nor does the mere longevity of her prior service." *Id.* at 724, 260 S.E.2d at 616.

We are aware of no authority recognizing a property interest in a promotion, and Tully concedes in his brief to this Court that no such property interest exists here. Accordingly, we conclude that the trial court correctly granted the City's motion to dismiss Tully's Article I, Section 19 claim because no property interest is implicated here. On this issue we reverse the Court of Appeals.

**IV.    Conclusion**

Taking all of Tully's allegations in the light most favorable to him, as we must at the pleading stage, we hold that Tully has alleged a claim for the deprivation of his right to the enjoyment of the fruits of his labor under Article I, Section 1 of the North Carolina Constitution. "As this case moves forward to summary judgment or trial, plaintiff will have to prove that his allegations are true" and that his constitutional rights were indeed violated. *Turner v. Thomas*, 369 N.C. 419, 429, 794 S.E.2d 439, 447 (2016); *see also Harwood v. Johnson*, 326 N.C. 231, 241, 388 S.E.2d 439, 445 (1990) (concluding that although "the complaint is sufficient to withstand a motion to dismiss[,] [i]t remains to be determined, upon summary judgment, or at trial, whether plaintiff can forecast or prove" that the defendants violated his constitutional rights).

Accordingly, we affirm the Court of Appeals' holding that the trial court erred in dismissing Tully's claim arising under Article I, Section 1. We reverse the portion of the Court of Appeals decision concluding that Tully stated a valid claim under Article I, Section 19. This case is remanded to the Court of Appeals for further remand to the trial court for additional proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.