IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-527

No. COA 19-683

Filed 5 October 2021

Durham County, No. 18 CVS 4073

MICHAEL MOLE', Plaintiff,

v.

CITY OF DURHAM, NORTH CAROLINA, a municipality, Defendant.

Appeal by Plaintiff from order entered 24 May 2019 by Judge John M. Dunlow in Durham County Superior Court. Heard in the Court of Appeals 10 June 2021.

> *The McGuinness Law Firm, by J. Michael McGuinness, and Edelstein & Payne, by M. Travis Payne, for Plaintiff-Appellant.*
>
> *Kennon Craver, PLLC, by Henry W. Sappenfield and Michele L. Livingstone, for Defendant-Appellee.*
>
> *Essex Richards, P.A., by Norris A. Adams, II, for North Carolina Fraternal Order of Police, amicus curiae.*

INMAN, Judge.

¶ 1     In his first experience negotiating the surrender of an armed and barricaded suspect, without another negotiator backing him up, Durham Police Sergeant Michael Mole' might have given up when the suspect's gun discharged at close range. He didn't, and two hours later he had persuaded the suspect to drop his weapon and surrender. The suspect, other citizens, and law enforcement officers were safe. But

Sergeant Mole' was fired because he had secured the suspect's surrender by promising to allow him to smoke a marijuana cigarette once in custody, and he made good on the promise immediately following the arrest.

¶ 2    Sergeant Mole' sued the City of Durham, alleging that his employer violated his rights under the North Carolina Constitution. The trial court dismissed his complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

¶ 3    Because the complaint alleges a colorable violation of Article I, Section 1 of the North Carolina Constitution, which protects each person's right to enjoy the fruits of their own labor, we hold the trial court erred in dismissing that claim. We otherwise affirm the trial court because binding precedent precludes a holding that Sergeant Mole' has a constitutionally protected interest in continued employment under theories of due process or equal protection.

## I.    FACTUAL AND PROCEDURAL HISTORY

¶ 4    The complaint pleads the following facts:

¶ 5    Sergeant Mole' began working for the Durham Police Department in May 2007. He received hostage negotiation training in May 2014, but he did not negotiate a barricaded subject or hostage situation until the events giving rise to this case.

¶ 6    On 28 June 2016, the Durham Police Department dispatched officers to an apartment in Durham to serve an arrest warrant on Julius Smoot ("Smoot"). After entering the apartment, officers discovered that Smoot had barricaded himself in an

upstairs bedroom. Smoot yelled that he had a gun and that he would use it on himself in ten minutes unless he was allowed to see his wife and son. The officers retreated and requested a hostage negotiator.

¶ 7        Sergeant Mole' was the only hostage negotiator on duty at the time. He arrived at the apartment five minutes before Smoot's deadline and began negotiations with the primary goals of extending the deadline and keeping Smoot alive. During these negotiations, Smoot accidentally discharged his firearm.

¶ 8        Sergeant Mole' continued to negotiate with Smoot for approximately two hours. During this time, Smoot said he planned to smoke a "blunt," a marijuana cigarette. Sergeant Mole', reluctant to allow an armed and barricaded subject to impair his mental state, asked Smoot to refrain. Sergeant Mole' promised Smoot that if he disarmed and peacefully surrendered, he would be allowed to smoke the blunt.

¶ 9        Smoot then dropped his gun, handcuffed himself, and surrendered to Sergeant Mole' in the apartment. Still in handcuffs, Smoot asked for his pack of legal tobacco cigarettes and lighter, which were on a nearby table, and Sergeant Mole' handed those items to him. Smoot then pulled a marijuana blunt from behind his ear, lit it with the lighter, and smoked approximately half of it.

¶ 10        The Durham Police Department launched an internal investigation of Sergeant Mole's actions following Smoot's peaceful surrender. On 24 October 2016, approximately four months after the incident, Sergeant Mole' was informed in writing

that a pre-disciplinary hearing would take place the next day, despite Durham's written policy requiring advance notice of at least three days. Following the hearing, Sergeant Mole's immediate supervisors recommended that he be reprimanded. But Durham terminated him.

¶ 11        In November 2018 Sergeant Mole' filed a complaint alleging Durham had violated his state constitutional rights to due process, equal protection, and the fruits of his labor under the North Carolina Constitution. The trial court entered an order granting Durham's motion to dismiss the complaint under Rule 12(b)(6) on 22 May 2019. Sergeant Mole' appeals.

## II.    ANALYSIS

¶ 12        Sergeant Mole' argues that the facts pled in his complaint support claims for violations of his state constitutional rights to due process, equal protection, and the fruits of his labor. Article I, Section 1 of the North Carolina Constitution, in a provision unique to that document as compared to the federal constitution, protects the people's rights to enjoy the fruits of their own labor. This provision was recently applied by our Supreme Court in *Tully v. City of Wilmington*, 370 N.C. 527, 810 S.E.2d 208 (2018). Following the Supreme Court's reasoning in *Tully*, we hold that Sergeant Mole's complaint adequately pleads a claim for violation of Article I, Section 1. We are constrained by binding precedents to affirm the trial court's dismissal of his remaining constitutional claims.

### A. Standard of Review

We review an order granting a 12(b)(6) motion to dismiss *de novo* to determine whether the complaint states a claim under which relief can be granted. *Wells Fargo Bank, N.A. v. Corneal*, 238 N.C. App. 192, 195, 767 S.E.2d 374, 377 (2014). We liberally construe the complaint and take the material factual allegations as true. *Id.* Legal conclusions, unlike factual allegations, are not presumed valid. *Id.*

### B. Fruits of One's Labor

Sergeant Mole' argues that his termination violated his right to the fruits of his labor guaranteed by Article I, Section 1 of the North Carolina Constitution. This provision ensures each person the right to "life, liberty, *the enjoyment of the fruits of their own labor*, and the pursuit of happiness." N.C. Const. art. I, § 1 (emphasis added). Unlike the due process and equal protection provisions of our state constitution, which have been interpreted to provide the same protection as provisions in the federal constitution, this guarantee has no analogous federal constitutional clause. *See infra* Parts II.C (1) and (2).

The "fruits of their own labor" clause was added to our state constitution in 1868. It was adopted the same year the Fourteenth Amendment to the United States Constitution was ratified, at a time when formerly enslaved persons were newly able to work for their own benefit. *See* John V. Orth, *The North Carolina State Constitution with History and Commentary* 38 (1995) (recognizing that the clause

was "an addition that may have been intended to strike an ideological blow at the slave labor system").

¶ 16    Our appellate courts did not consider the clause until the 20th century, when it was applied to check the State's professional licensing powers. *See generally, e.g., State v. Harris*, 216 N.C. 746, 6 S.E.2d 854 (1940) (dry cleaning); *State v. Ballance*, 229 N.C. 764, 51 S.E.2d 731 (1949) (photography); *Roller v. Allen*, 245 N.C. 516, 96 S.E.2d 851 (1957) (tile installation). These decisions recognized a person's ability to earn a livelihood as a protected constitutional right and struck down licensing restrictions not rationally related to public health, safety, or welfare and not reasonably necessary to promote a public good or prevent a public harm. *Roller*, 245 N.C. at 518, 96 S.E.2d at 854; *Ballance*, 229 N.C. at 769-70, 51 S.E.2d at 735.

¶ 17    In recent years, our Supreme Court has extended application of the fruits of one's labor clause beyond licensing restrictions to other state actions that interfere with one's right to earn a livelihood. *King v. Town of Chapel Hill* held that a town ordinance capping towing fees was arbitrary and violated tow truck drivers' rights to enjoy the fruits of their labor. 367 N.C. 400, 408, 758 S.E.2d 364, 371 (2014). *Tully v. City of Wilmington* held that a municipal police department violated a public employee's constitutional right to enjoy the fruits of his own labor when it failed to follow its own promotion procedures. 370 N.C. at 539, 810 S.E.2d at 217.

¶ 18    *Tully* involved a Wilmington police officer who was denied a promotion after

he failed a mandatory examination that tested an officer's knowledge of the law. 370 N.C. at 528-29, 810 S.E.2d at 211. His exam answers were correct based on the current state of the law, but he failed the exam because the answer key was outdated. *Id.* Written department policy laid out the promotion and examination procedures and provided that candidates could appeal any portion of the selection process, so the officer sought to appeal his test results. *Id.* at 529-30, 810 S.E.2d at 211. The City of Wilmington refused to hear the officer's appeal, determining the test results "were not a grievable item" and that nothing could be done. *Id.* at 529, 810 S.E.2d at 211 (quotation marks omitted).

¶ 19     Our Supreme Court held that this denial of process violated the officer's constitutional rights under Article I, Section 1, reasoning the provision applies "when a governmental entity acts in an arbitrary and capricious manner toward one of its employees by failing to abide by promotional procedures that the employer itself put in place." *Id.* at 535-36, 810 S.E.2d at 215. It established the following requirements to plead such a constitutional claim:

> [T]o state a direct constitutional claim grounded in this unique right under the North Carolina Constitution, a public employee must show that no other state law remedy is available and plead facts establishing three elements: (1) a clear, established rule or policy existed regarding the employment promotional process that furthered a legitimate governmental interest; (2) the employer violated that policy; and (3) the plaintiff was injured as a result of that violation.

*Id.* at 536-37, 810 S.E.2d at 216.[1]

### 1. Tully *and Article I, Section 1 Apply to Mole's Discipline*

¶ 20     In deciding whether Sergeant Mole' has asserted a valid Article I, Section 1 claim, we must first resolve whether this state constitutional claim is limited to the "employment promotional process" language used by our Supreme Court in *Tully*. A strict reading of *Tully* would foreclose his claim. However, *Tully* detailed the underlying constitutional injury in that case in terms broader than the promotional process, and the logic employed in that decision applies with equal force to the disciplinary action taken against Sergeant Mole'. Our understanding of *Tully* and its rationale, combined with its instruction to "give our [state] Constitution a liberal interpretation in favor of its citizens with respect to those provisions which were designed to safeguard the liberty and security of the citizens in regard to both person and property," *id.* at 533, 810 S.E.2d at 214 (citation and quotation marks omitted), leads us to hold that Article I, Section 1 applies to the disciplinary action taken against Sergeant Mole'.

¶ 21     In declaring the existence of a valid claim under Article I, Section 1 in *Tully*, the Supreme Court acknowledged "the right to pursue one's profession free from

---

[1] The Supreme Court declined to decide the form of remedy to which a successful *Tully* plaintiff is entitled, leaving that to the trial court to determine based on the facts of the case. *Id.* at 538, 810 S.E.2d at 216.

unreasonable governmental action." *Id.* at 535, 810 S.E.2d at 215. It did so in part based on *Presnell v. Pell*, which recognized an allegedly unreasonable termination of a public school teacher implicated "the right to engage in any of the common occupations of life, unfettered by unreasonable restrictions imposed by actions of the state or its agencies." 298 N.C. 715, 724, 260 S.E.2d 611, 617 (1979) (citations and quotation marks omitted) (quoted in *Tully*, 370 N.C. at 535, 810 S.E.2d at 214).[2] *Tully* quoted *Presnell* for the further proposition that "[t]he right of a citizen to live and work where he will is offended when a state agency unfairly imposes some stigma or disability that will itself foreclose the freedom to take advantage of employment opportunities." *Tully*, 370 N.C. at 535, 810 S.E.2d at 214-15 (quoting *Presnell*, 298 N.C. at 724, 260 S.E.2d at 617). It is undeniable that unreasonable employee discipline—including termination—by a government employer implicates this same right and raises the same concerns. *See Presnell*, 298 N.C. at 724, 260 S.E.2d at 617.

¶ 22      The Supreme Court in *Tully* ultimately announced that "Article I, Section 1 also applies when a governmental entity acts in an arbitrary and capricious manner toward one of its employees by failing to abide by promotional procedures that the employer itself put in place." 370 N.C. at 535-36, 810 S.E.2d at 215. In reaching this

---

[2] *Presnell* held that the discharged teacher was not denied due process protections, but *Tully* was not resolved on due process grounds. *Tully*, 370 N.C. at 532 n.4, 810 S.E.2d at 213 n.4. The Supreme Court nevertheless relied on *Presnell* in its Article I, Section 1 analysis in *Tully*. *Id.* at 534-35, 810 S.E.2d at 214-15. We rely on *Presnell* to the same extent here.

conclusion, *Tully* relied on the United States Supreme Court's reasoning in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 98 L. Ed. 681 (1954), and lower court decisions applying *Accardi*. According to *Tully*, *Accardi* and the cases applying it "recognize[] the impropriety of government agencies ignoring their own regulations, albeit in other contexts." 370 N.C. at 536, 810 S.E.2d at 215 (citing *Accardi*, 347 U.S. at 268, 98 L. Ed. at 687; then citing *United States v. Heffner*, 420 F.2d 809, 811-12 (4th Cir. 1969); and then citing *Farlow v. N.C. State Bd. of Chiropractic Exam'rs*, 76 N.C. App. 202, 208, 332 S.E.2d 696, 700 (1985)).

¶ 23        Decisions recognizing the impropriety of government agencies ignoring their own rules in "other contexts," though not directly cited in *Tully*,[3] include the termination of public employees in violation of internal disciplinary procedures. *See Service v. Dulles*, 354 U.S. 363, 388-89, 1 L. Ed. 2d 1403, 1418 (1957) (applying *Accardi* to reinstate a foreign service officer fired by the Secretary of State despite a federal statute allowing at-will discharge because the agency violated its own procedures); *Vitarelli v. Seaton*, 359 U.S. 535, 545-46, 3 L. Ed. 2d 1012, 1020-21 (1959) (reinstating employment of a federal security guard under *Accardi* because the

---

[3] *Tully* cites *Accardi*, *Heffner*, and *Farlow* by way of a "*See, e.g.,*" signal. 370 N.C. at 536, 810 S.E.2d at 215. Courts, practitioners, and legal academics use the signal "*E.g.,*" to show that the "[c]ited authority states the proposition; other authorities also state the proposition, but citation to them would not be helpful or is not necessary." *The Bluebook: A Uniform System of Citation* R. 1.2(a) (Colum. L. Rev. Ass'n et al. eds., 21st ed. 2020). In other words, *Tully* acknowledges *Accardi*'s application beyond the other two decisions cited.

agency violated its own procedural rules at his termination hearing). These decisions do not interpret North Carolina law. But just as *Tully* found other decisions applying *Accardi* pertinent, we find the analysis in *Dulles* and *Vitarelli* instructive in our review of *Tully* and, for the reasons above, hold that *Tully's* articulation of Article I, Section 1's protections extends to the discipline of Sergeant Mole'.

### 2. *Sufficiency of Mole's Complaint Under* Tully

¶ 24        Having held that the disciplinary procedure at issue here falls within the ambit of *Tully*, we next examine whether the allegations in Sergeant Mole's complaint otherwise satisfy the three elements established by our Supreme Court in that decision.[4] The first two elements require Sergeant Mole' to allege the existence and violation of an internal employment policy that was "clear [and] established . . . [and] that furthered a legitimate governmental interest." *Tully*, 370 N.C. at 537, 810 S.E.2d at 216.

¶ 25        Sergeant Mole's complaint alleges several policy violations of varying stripes, namely: (1) the acting watch commander failed to deploy the hostage negotiation team, the Special Enforcement Team, or stage fire and emergency medical services; (2) the watch commander negotiated with Smoot without Sergeant Mole's knowledge; (3) an "after-action report/critical incident critique" was not completed; (4) Sergeant

---

[4] The complaint asserts, and Durham did not contest before this Court, that Sergeant Mole' has no other remedy in state law.

Mole' took Smoot into custody because the designated tactical personnel were never deployed; (5) Sergeant Mole' was not offered psychological services following the incident; (6) other officers failed to secure prior written consent to conduct the search that initiated the standoff with Smoot; (7) the incident should have been designated a high-risk warrant service but was not; (8) Sergeant Mole' was not provided quarterly training and he did not meet annually with the department's Special Enforcement Team as required for hostage negotiators; and (9) Durham gave Sergeant Mole' only 24 hours' notice of his pre-disciplinary conference instead of the minimum 72 hours' notice mandated by policy.

The first eight policy violations alleged above put Sergeant Mole' into an untenable position, but they do not state a claim under *Tully*. *Tully* protects public employees from unreasonable violations of *employment* policies, not field operating or training procedures that do not bear upon internal processes governing the employer-employee relationship. *See Tully*, 370 N.C. at 537, 810 S.E.2d at 216 ("Tully's allegations show that the City's actions injured him by denying him a fair opportunity to proceed to the next stage of the competitive promotional process, thereby 'unfairly impos[ing] [a] stigma or disability that will itself foreclose the freedom to take advantage of employment opportunities.' " (quoting *Presnell*, 298 N.C. at 724, 260 S.E.2d at 617) (alteration in original)).

But Sergeant Mole's allegation that he was given improper and inadequate

notice of his pre-disciplinary hearing does fall within Article I, Section 1's protections. This shortened notice period violated Durham's own employment disciplinary procedures. Sergeant Mole' further alleges that these pre-disciplinary procedures were designed to further a legitimate government interest, namely that its employees be treated fairly in the administration of discipline. *Cf. id.* (recognizing "the legitimate governmental interest of providing a fair procedure that ensures qualified candidates move to the next stage of the promotional process"). Sergeant Mole' has thus pled a redressable violation of his employer's disciplinary procedures designed to further a legitimate governmental interest, in satisfaction of the first two elements from *Tully*.

¶ 28     Sergeant Mole' has likewise satisfied the final element, injury, based on a liberal construction of his complaint. Sergeant Mole' specifically alleges that "[h]ad [he] been afforded his opportunity . . . to prepare at a minimum of three days instead of less than 24 hours, Sergeant Mole' would have had reasonable notice and could have better prepared and provided a more comprehensive response." From there, he asserts Durham "failed to comply with mandatory conditions precedent before proceeding with dismissal . . . [and] did not comply with its own stated [disciplinary] policies," before alleging Durham's "conduct including actions and omissions in its treatment of Sergeant Mole' w[as] arbitrary, capricious, irrational and predicated upon selective enforcement of personnel and law enforcement policies and disparate

treatment in discipline and thereby deprived Sergeant Mole' of the fruits of [his] labors." These allegations are similar to those held adequate to demonstrate a claim in *Tully*, 370 N.C. at 536-37, 810 S.E.2d at 215-16, and we therefore hold Sergeant Mole' has sufficiently alleged he "was injured as a result of [Durham's procedural] violation[s]." *Id.* at 537, 810 S.E.2d at 216.[5]

¶ 29        We acknowledge North Carolina's general policy of at-will employment, long established in common law. *See, e.g., Presnell*, 298 N.C. at 723-24, 260 S.E.2d at 616 ("Nothing else appearing, an employment contract in North Carolina is terminable at the will of either party."). We do not hold that Durham could not terminate Sergeant Mole' based on the conduct at issue, or that Durham could not terminate Sergeant Mole' without cause. Given the stage of proceedings, "we express no opinion on the ultimate viability of [Sergeant Mole']s claim." *Id.* at 537, 810 S.E.2d at 216. Like the Supreme Court in *Tully*, "we [do] not speculate regarding whether [Sergeant Mole'] would [not have been terminated] had [Durham] followed its own [disciplinary] policy." *Id.* at 537-38, 810 S.E.2d at 216. At this early stage of litigation, we do not address whether Sergeant Mole' must be reinstated or what relief must be afforded to him should he prevail, as "[i]t will be a matter for the trial judge to craft the

---

[5] Durham argues this procedural violation does not rise to a cognizable constitutional injury based on *Hilliard v. N.C. Dep't of Corr.*, 173 N.C. App. 594, 620 S.E.2d 14 (2005). *Hilliard* was decided prior to *Tully,* did not involve a claim under Article I, Section 1, and is therefore not controlling on this issue.

necessary relief." *Id.* at 538, 810 S.E.2d at 216 (quoting *Corum v. Univ. of N.C.*, 330 N.C. 761, 784, 413 S.E.2d 276, 290-91 (1992)). We only hold that Durham must follow its own disciplinary procedures—created to protect its legitimate governmental interest in treating city employees fairly—in discharging Sergeant Mole'. If the evidence shows that Durham failed to do so and that Sergeant Mole' was harmed by that failure, Article I, Section 1 of our Constitution provides a remedy.

## C. Due Process and Equal Protection

¶ 30    We next address the two remaining constitutional claims dismissed by the trial court. As explained below, we affirm the trial court based on precedent.

### 1. Due Process

¶ 31    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of the law." U.S. Const. amend. XIV, § 1. The North Carolina Constitution provides that "no person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art I, § 19. Our state's "law of the land clause is considered 'synonymous' with the Fourteenth Amendment to the United States Constitution." *Woods v. City of Wilmington*, 125 N.C. App. 226, 230, 480 S.E.2d 429, 432 (1997) (citation omitted). Decisions of the United States Supreme Court as to federal due process are "highly persuasive, but not binding on the courts

of this State." *State v. Smith*, 90 N.C. App. 161, 163, 368 S.E.2d 33, 35 (1988).

¶ 32    In order to succeed on a due process challenge, the plaintiff must first show that he "has been deprived of a protected interest in 'property' or 'liberty.' " *Dobrowolska v. Wall*, 138 N.C. App. 1, 11, 530 S.E.2d 590, 598 (2000) (quoting *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 59, 143 L. Ed. 2d 130, 149 (1999)).  The court must decide whether the interest relates to a fundamental right "rooted in the traditions and conscience of our people." *Reno v. Flores*, 507 U.S. 292, 303, 123 L. Ed. 2d 1, 17 (1993) (citation and quotation marks omitted).  "Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561 (1972). Whether a person's interest in continued employment falls within the scope of constitutional protection is determined under the law of the state where the person is employed. *Bishop v. Wood*, 426 U.S. 341, 344, 48 L. Ed. 2d 684, 690 (1976).

¶ 33    We are constrained by North Carolina Supreme Court precedent holding that employees in this state generally do not have a property interest in continued employment.  *Presnell*, 298 N.C. at 723-24, 260 S.E.2d at 616.  The Court in *Presnell* held that this rule applies to both private and public employment.  *Id.* ("The fact that

plaintiff was employed by a political subdivision of the state does not entitle her to tenure . . . ."). The state may create a property interest in employment by statute, ordinance, or express or implied contract. *Id.* at 723, 260 S.E.2d at 616. In the absence of any of these, however, no such interest exists. *Id.* at 723-24, 260 S.E.2d at 616.

¶ 34     Sergeant Mole' argues Durham's internal personnel policies established an "indirect or informal" property right in his continued employment. His complaint identifies governing provisions such as Durham's "Disciplinary and Grievance" policy and its "practice and custom of commensurate discipline." However, the complaint does not identify any policies that have been incorporated into ordinance or statute or included in Sergeant Mole's employment contract.

¶ 35     We are bound by precedent holding that policies like those identified by Sergeant Mole' do not give rise to a protected property interest. In *Wuchte v. McNeil*, this Court held that a Durham police officer, terminated without being afforded procedures provided by the city's personnel policies, could not state a claim for wrongful termination without evidence that his employment contract, a statute, or an ordinance provided that he could only be dismissed for good cause. 130 N.C. App. 738, 741-42, 505 S.E.2d 142, 145 (1998).[6] We noted that "[a]n employee is presumed

---

[6] *Wuchte* was decided two decades prior to *Tully*, strictly on due process grounds. 130 N.C. App. at 744, 505 S.E.2d at 146-47.

to be an employee-at-will absent a definite term of employment or a condition that the employee can only be fired only 'for cause.' " *Id.* at 740, 505 S.E.2d at 144 (citation omitted). In *Wuchte*, as in this case, the plaintiff relied on personnel policies that had not been enacted as an ordinance, and we held that unilaterally promulgated personnel memoranda did not establish a protected property interest. *Id.* at 742, 505 S.E.2d at 145.[7]

¶ 36 By contrast, in *Howell v. Town of Carolina Beach*, this Court held that a manual adopted by the town as an ordinance granted employees a "reasonable expectation of employment and a property interest within the meaning of the due process clause." 106 N.C. App. 410, 417, 417 S.E.2d 277, 281 (1992). Sergeant Mole's complaint does not allege that Durham has codified its personnel policies in an ordinance.

¶ 37 As we noted above, whether an employee has a constitutionally protected interest under the due process clause is not determined by reference to the federal constitution but depends on state law. *Bishop*, 426 U.S. at 344, 48 L. Ed. 2d at 690.

---

[7] This Court has previously questioned the rationale of this black-letter law. *See, e.g., Walker v. Westinghouse Elec. Corp.*, 77 N.C. App. 253, 259, 335 S.E.2d 79, 83-84 (1985) ("[T]here are strong equitable and social policy reasons militating against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice. Nevertheless, the law of North Carolina is clear that unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it." (citations omitted)).

Federal courts applying North Carolina law have recognized that personnel rules and regulations merely supply internal administrative guidelines and do not grant a property interest subject to due process protections unless enacted as an ordinance. *Pittman v. Wilson Cty.*, 839 F.2d 225, 229 (4th Cir. 1988); *Dunn v. Town of Emerald Isle*, 722 F.Supp. 1309, 1311 (E.D.N.C. 1989).

¶ 38    Sergeant Mole' notes that he was granted "permanent employee" status after a probationary period, and his complaint alleges this status grants him the "right to be afforded due process in the disciplinary system." But without contract provisions setting a term of employment or procedures by which the employment might be terminated, "permanent" employment is presumed to be terminable at the will of either party and does not alone confer a property or liberty interest in continued employment. *Nantz v. Emp't Sec. Comm'n*, 290 N.C. 473, 477, 226 S.E.2d 340, 343 (1976). *But see Presnell*, 298 N.C. at 724, 260 S.E.2d at 617 ("The liberty interest here implicated—the freedom to seek further employment—was offended not by her dismissal alone, but rather by her dismissal upon alleged unsupported charges which, left unrefuted, might wrongfully injure her future placement possibilities.").

¶ 39    Sergeant Mole' also argues that his dismissal was arbitrary and capricious, giving rise to a claim for violation of his due process rights "to continued employment when Defendant arbitrarily terminated [him]." But our Supreme Court has held that an at-will employee has no right to continued employment, and thus arbitrary

conduct by an at-will employer does not state a cognizable violation of the due process protections of the North Carolina Constitution. *See Tully*, 370 N.C. at 538-39, 810 S.E.2d at 216-17 (holding Tully's allegations that the City of Wilmington "arbitrarily and irrationally deprived [him]" of an alleged "property interest in his employment with the City" failed to state a valid due process claim under the North Carolina Constitution because, per *Presnell*, at-will public employees have no cognizable property interest in continued employment).

¶ 40     To be sure, this Court has recognized violations of state and federal substantive due process protections without requiring the plaintiff allege or demonstrate the deprivation of a recognized property or liberty interest where the State's conduct was "so egregious that it shocks the conscience or offends a sense of justice." *Toomer v. Garrett* 155 N.C. App. 462, 470, 574 S.E.2d 76, 84 (2002). But that case, unlike *Tully*, did not involve an employment decision. It instead concerned a state agency's public disclosure of an employee's personnel file, including social security number, medical diagnoses, and personal financial data, without any rational relationship to any governmental interest. 155 N.C. App. at 472, 574 S.E.2d at 85.[8] In contrast to

---

[8] Sergeant Mole' cites a United States Supreme Court decision holding that Oklahoma state employees' federal substantive due process protections were violated by their employer's arbitrary and capricious conduct, without finding that the employees had a property or liberty interest in the employment. *Wieman v. Updegraf* held that a statute requiring state employees to take a loyalty oath asserting they were not affiliated with

*Toomer*, a holding here that Sergeant Mole's allegedly arbitrary and capricious termination violated his substantive due process rights, without a cognizable property interest in continued employment, would effectively hold that he could not be terminated except for cause. As discussed above, North Carolina employees do not enjoy that substantive due process protection unless it is explicitly incorporated into their employment contract or promulgated by statute or ordinance.

### 2. *Equal Protection*

Sergeant Mole' also asserts that Durham subjected him to disparate treatment as compared to similarly situated employees. His complaint cites examples of misconduct by other Durham police officers that he alleges were more egregious than the actions that led to his termination.

Both our federal and state constitutions guarantee that individuals receive "the equal protection of the laws." N.C. Const. Art. I, § 19; U.S. Const. amend. XIV, § 1. The equal protection clause of the United States Constitution's Fourteenth

---

communist organizations was unconstitutional. 344 U.S. 183, 191, 97 L. Ed. 216, 222 (1952). However, *Weiman* did not specifically address, and lower federal court decisions have not held, that arbitrary termination from at-will employment gives rise to a substantive due process claim. *See, e.g., Darr v. Town of Telluride, Colo*, 495 F.3d 1243, 1258 (10th Cir. 2007) (observing *Wieman* did not address at-will employment and holding a town could terminate a marshal, even for allegedly arbitrary and capricious reasons, because "[t]he substantive-due-process clause does not forbid a public employer from terminating its at-will employees without cause"); *Singleton v. Cecil*, 176 F.3d 419, 423-24 (8th Cir. 1999) ("[T]he defendants' alleged arbitrary and capricious firing of Officer Singleton, an at-will employee[,] . . . did not violate his substantive due process rights.").

Amendment "has been expressly incorporated in Art. I, § 19 of the Constitution of North Carolina," *S.S. Kresge Co. v. Davis*, 277 N.C. 654, 660, 178 S.E.2d 382, 385 (1971), and the same analysis applies to both. *Toomer*, 155 N.C. App. at 476, 574 S.E.2d at 88; *see also Richardson v. N.C. Dep't of Corr.*, 345 N.C. 128, 134, 478 S.E.2d 501, 505 (1996) (applying "the same test as federal courts" to determine whether limiting working prisoners' remedy to workers' compensation violates their right to equal protection).

¶ 43        A typical equal protection claim alleges that the plaintiff was treated differently by legislation or a state actor due to their membership in a suspect class: race, color, religion, national origin, etc. *See Engquist* v. *Or. Dep't of Agric.,* 553 U.S. 591, 601, 170 L. Ed. 2d 975, 985 (2008). Where the treatment varies based upon a suspect class or impacts a fundamental right, we apply strict scrutiny and determine whether the state action is necessary to promote a compelling government interest. *State ex. rel. Utils. Comm'n v. Carolina Util. Customers Ass'n*, 336 N.C. 657, 681, 446 S.E.2d 332, 346 (1994). The United States Supreme Court and, in turn, North Carolina courts, have also recognized the existence of "class of one" equal protection claims in which plaintiffs allege they were intentionally treated differently from others similarly situated. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 1063 (2000); *In re Application of Ellis*, 277 N.C. 419, 424, 178 S.E.2d 77, 80 (1970) (recognizing "the constitutional limitation forbidding arbitrary and unduly

discriminatory interference with the right of property owners"). When the plaintiff is not a member of a suspect class and does not assert wrongful termination in violation of a fundamental right,[9] "it is necessary to show only that the classification created by the [government action] bears a rational relationship to some legitimate state interest." *Richardson,* 345 N.C. at 134, 478 S.E.2d at 505 (citation omitted).

¶ 44        Sergeant Mole' asserts a class-of-one claim by arguing that he was situated similarly to other Durham police officers who violated department policies and received significantly less severe discipline. The United States Supreme Court has recognized this type of claim in relation to real property rights. In *Olech* the Court held the complaint, alleging that the defendant arbitrarily required the plaintiff to cede a larger easement than her neighbors in order to connect to the municipal water supply, was sufficient to state a class-of-one claim. 528 U.S. at 565, 145 L. Ed. 2d at 1063-64. Previous Supreme Court decisions also recognized this type of claim without explicitly identifying the claims as "class-of-one." *See Sioux City Bridge Co. v. Dakota Cty.*, 260 U.S. 441, 446-47, 67 L. Ed. 340, 343 (1923) (holding that assessing property at 100% of its true value when all other property in the county was evaluated at 55% violated equal protection); *Allegheny Pittsburgh Coal Co. v. Cty. Comm'n of Webster*

---

[9] Fundamental rights recognized by the United States Supreme Court include the right to vote, the right of interstate travel, rights guaranteed by the first amendment such as freedom of expression and religion, and the right to procreate. *Carolina Utility Customers Ass'n,* 336 N.C. at 681 n.6, 446 S.E.2d at 346 n.6 (1994).

*Cty.*, 488 U.S. 336, 341-43, 102 L. Ed. 2d 688, 695-96 (1989) (holding assessment methodology that produced "dramatic differences in valuation" between petitioners' property and comparable surrounding land violated equal protection).

¶ 45        But the United States Supreme Court has held that class-of-one claims cannot be stated in the employment context.  In *Engquist*, the plaintiff asserted a class-of-one equal protection claim against her employer, alleging that she was terminated for arbitrary, vindictive, and malicious reasons.  553 U.S. at 595, 170 L. Ed. 2d at 982.  A coworker who had personal issues with the plaintiff formed an alliance with an assistant director who had assured a client that the plaintiff would be "gotten rid of."  *Id.* at 594, 170 L. Ed. 2d at 981.  The plaintiff was then passed over for a promotion in favor of a less-qualified coworker and told that she could only stay with the department if she accepted a demotion.  *Id.* at 595, 170 L. Ed. 2d at 981.

¶ 46        While the Court recognized that the equal protection clause's protections apply to administrative as well as legislative acts and that states do not escape its requirements in their role as employers, it distinguished between the government taking action as a regulator and the government taking action "as proprietor, to manage its internal operation."  *Id.* at 598, 170 L. Ed. 2d at 983 (cleaned up).  The *Engquist* Court noted that some forms of state action, including employment decisions, "involve discretionary decisionmaking based on a vast array of subjective, individualized assessments."  *Id.* at 603, 170 L. Ed. 2d at 987.  The Court reasoned

that as opposed to the regulation of third parties, treating similarly situated employees differently is "par for the course." *Id.* at 604, 170 L. Ed. 2d at 988. The Court characterized class-of-one claims in the public employment context as "contrary to the concept of at-will employment," *id.* at 606, 170 L. Ed. 2d at 989, and held that "the class-of-one theory of equal protection has no application in the public employment context[.]" *Id.* at 607, 170 L. Ed. 2d at 989.

We must again consider whether the analogous clause in the North Carolina Constitution is more protective and extends the guarantee of equal protection in the public employment context. As with due process, the fact that the Fourteenth Amendment does not provide a cause of action for Sergeant Mole' does not necessarily foreclose the possibility that our state Constitution could yield a remedy: the United States Constitution is the floor of constitutional protections in North Carolina, not the ceiling. *See State v. Carter*, 322 N.C. 709, 713, 370 S.E.2d 553, 555 (1988). The North Carolina Constitution is to be liberally construed, especially the provisions safeguarding individual liberty and property rights. *Tully*, 370 N.C. at 533, 810 S.E.2d at 214.

However, precedent precludes us from unfettered liberal analysis. This Court has clearly and explicitly held that the equal protection rights guaranteed by the North Carolina Constitution are the same as those in the United States Constitution, and the analysis under each is the same. *Toomer*, 155 N.C. App. at 476, 574 S.E.2d

at 88. We have searched without success for decisions holding otherwise. Our review reveals no decision in North Carolina recognizing class-of-one claims in the employment context. We are bound by our existing precedent. *Johnson v. State*, 224 N.C. App. 282, 297, 735 S.E.2d 859, 871 (2012). But the final arbiter of the North Carolina Constitution is the North Carolina Supreme Court. *Lea Co. v. N.C. Bd. of Transp.*, 308 N.C. 603, 610, 304 S.E.2d 164, 170 (1983). Because our constitution is to be liberally construed, we urge the Supreme Court to address this issue.[10]

### III. CONCLUSION

For the reasons explained above, we hold that the trial court erred in dismissing Sergeant Mole's claim for violation of his right to the fruits of his labor and reverse that portion of the trial court's order. We affirm the trial court's dismissal of Sergeant Mole's remaining claims. The matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

JUDGES ZACHARY AND CARPENTER concur.

---

[10] In dissent, Justice Stevens characterized the *Engquist* majority's exclusion of public employees as applying a "meat-axe" to resolve an issue better addressed with a scalpel. 553 U.S. at 610, 170 L. Ed. 2d at 991. It is not necessary that protections provided by our state constitution exclude the same broad category of claims.