IN THE SUPREME COURT OF NORTH CAROLINA

No. 229A24

Filed 22 August 2025

ERNEST CUTTER III, individually and derivatively on behalf of A COMMON
LAW GENERAL PARTNERSHIP d/b/a HOT DOG SHOPPE

v.

GREGORY VOJNOVIC and HOT DOG SHOPPE HOLDINGS, LLC

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from (1) an order and opinion on
defendants' motion for partial judgment on the pleadings, entered on
24 January 2023, and (2) an order and opinion on cross-motions for summary
judgment and defendants' motion to strike parts of the Cutter affidavit, entered on
16 February 2024, by Judge Louis A. Bledsoe III, Chief Business Court Judge, in
Superior Court, Mecklenburg County.[1] The case was designated a mandatory
complex business case by the Chief Justice pursuant to N.C.G.S. § 7A-45.4(a). Heard
in the Supreme Court on 25 February 2025.

> *James, McElroy & Diehl, P.A., by Preston O. Odom III, J. Alexander Heroy,*
> *and Jennifer M. Houti, for plaintiff-appellant.*
>
> *Baker Donelson Bearman Caldwell & Berkowitz, P.C., by Thomas G. Hooper,*
> *for defendant-appellees.*

BARRINGER, Justice.

---

[1] The issues presented by plaintiff on appeal stem from the Business Court's
24 January 2023 order and opinion, and 16 February 2024 order and opinion. Plaintiff
elected to present no issues stemming from the 20 September 2023 order listed on plaintiff's
notice of appeal. Thus, the 20 September 2023 order is not addressed in this opinion.

Plaintiff appeals to this Court following a series of unfavorable rulings by the Business Court in this complex business case. As explained below, for the most part, we agree with the Business Court. Therefore, we take this opportunity to endorse the majority of the Business Court's reasoning and the caselaw upon which it relied. We affirm the Business Court's 24 January 2023 order and opinion on defendants' motion for partial judgment on the pleadings, which grants partial judgment on the pleadings in favor of defendants. We modify and affirm the Business Court's 16 February 2024 order and opinion on cross-motions for summary judgment and defendants' motion to strike parts of the Cutter affidavit, which strikes portions of the Cutter affidavit, disregards a purported expert report, and grants summary judgment in favor of defendants.

## I. Factual Background

This action arises from the efforts of plaintiff, Ernest Cutter III, and defendant, Gregory Vojnovic, to purchase three independently owned restaurants known collectively as Jib Jab. Plaintiff's company, ARC Industries, Inc. (ARC) has a history of investing in small to mid-size companies involved in various industries such as light manufacturing, distribution, and warehousing.

In October 2019, plaintiff, on behalf of ARC, issued a nonbinding letter of intent detailing a possible purchase of Jib Jab. Plaintiff had no experience in the restaurant industry but wished to partner with someone who did. Thus, in November 2019, plaintiff reached out to defendant Vojnovic who was, at the time, the chief

executive officer of a company that provided consulting services to restaurants. Plaintiff and defendant Vojnovic orally agreed to work together toward purchasing Jib Jab. Specifically, plaintiff and defendant Vojnovic agreed that plaintiff would structure the terms of the acquisition, negotiate with Jib Jab's broker, procure funding for the purchase, close the deal, and spearhead any future financing and/or acquisitions. Defendant Vojnovic would be responsible for handling the operations of the Jib Jab restaurants following the acquisition. No written partnership agreement or written contract of any kind was executed between plaintiff and defendant Vojnovic.

In February 2020, plaintiff, on behalf of ARC, sent a new nonbinding letter of intent to Jib Jab, proposing slightly different terms of purchase. In March 2020, in anticipation of the Jib Jab purchase, defendant Vojnovic set up three separate entities: Hot Dog Shoppe Holdings, LLC (Holdings), Hot Dog Shoppe Operating, Inc. (Operating), and Hot Dog Shoppe Franchising, LLC (Franchising). Defendant is the registered agent for all three entities. Plaintiff and defendant Vojnovic intended Holdings to be the legal owner of Jib Jab.

Shortly after defendant Vojnovic created the three entities, the COVID-19 pandemic struck. Due to COVID-19, the Jib Jab restaurants were forced to close. The forced closure disrupted any financing attempts by plaintiff and defendant Vojnovic for the purchase of Jib Jab. Thus, plaintiff and defendant Vojnovic were unable to purchase Jib Jab.

Plaintiff submitted a third nonbinding letter of intent to Jib Jab in May 2020. However, Jib Jab rejected the terms proposed in this third letter of intent. In early June of 2020, defendant Vojnovic, on behalf of Holdings, sent a nonbinding letter of intent to Jib Jab with proposed terms. Jib Jab rejected the proposal. In response, defendant Vojnovic searched for financing options. Defendant Vojnovic's search resulted in only one option for financing: a U.S. Small Business Administration (SBA) guaranteed loan from HomeTrust Bank.

In late June 2020, plaintiff submitted to Jib Jab, on behalf of ARC, a final nonbinding letter of intent. The proposed terms of ARC's final letter of intent included financing via an SBA guaranteed loan from HomeTrust Bank. However, the SBA guaranteed loan would have required plaintiff and defendant Vojnovic to personally guarantee the loan. However, neither plaintiff nor defendant Vojnovic were willing to do so. In addition, to obtain the loan, defendant Vojnovic would have been required to pay off two other, unrelated outstanding SBA loans, for which he did not have the funds to pay. Defendant Vojnovic asked plaintiff to pay off his loans as a partnership expense. Plaintiff refused. Instead, plaintiff stated that he would accept a finder's fee—instead of an interest in Jib Jab—if defendant Vojnovic ultimately purchased Jib Jab.

Plaintiff made no further efforts to find another source of capital. Defendant Vojnovic realized that plaintiff would not participate in the management of, personally invest in, or guarantee financing for Jib Jab. Thus, defendant Vojnovic

moved forward with the deal on his own, taking on and completing tasks originally designated to plaintiff. Defendant Vojnovic satisfied his outstanding SBA loans, borrowed money from his brother to provide equity, and personally guaranteed the HomeTrust Bank loan to Holdings for the purchase of Jib Jab. Holdings purchased Jib Jab utilizing an SBA-guaranteed loan and a sale-leaseback transaction. Plaintiff had no involvement in the purchase, management, or operation of Holdings or Jib Jab.

## II. Procedural History

Plaintiff filed a complaint alleging that he and defendant Vojnovic had formed a common law partnership to purchase Jib Jab. Plaintiff further alleged that defendant Vojnovic breached that common law partnership agreement by purchasing Jib Jab without plaintiff. Plaintiff brought direct claims against defendant Vojnovic for breach of the partnership agreement, breach of fiduciary duty, tortious interference with prospective economic advantage, misappropriation of business opportunity, and seeking a constructive trust. Plaintiff brought direct claims against the alleged partnership seeking judicial dissolution and an accounting. On behalf of the alleged partnership, plaintiff brought purported derivative claims against defendant Vojnovic for breach of fiduciary duty, tortious interference with prospective economic advantage, and misappropriation of business opportunity. Against defendant Holdings, plaintiff brought direct claims and purported derivative claims for tortious interference with prospective economic advantage and sought a

constructive trust.[2] In conjunction with other defendants, defendant Vojnovic filed an answer and counterclaims but subsequently dismissed his counterclaims.

In October 2022, defendants filed a motion for partial judgment on the pleadings for the following claims against defendant Vojnovic: the derivative claim for breach of fiduciary duty, the derivative claim for tortious interference with prospective economic advantage, the direct and derivative claims for misappropriation of business opportunity, and the direct and derivative claims for a constructive trust. Defendants' motion also sought to dismiss the following claims against defendant Holdings: the derivative and direct claims for tortious interference with prospective economic advantage, and the direct and derivative claim for a constructive trust.

After a hearing on defendants' motion for partial judgment on the pleadings, the Business Court dismissed with prejudice all of plaintiff's derivative claims against both defendants, plaintiff's direct tortious interference claim against defendant Holdings, and plaintiff's direct claim for misappropriation of business opportunity against defendant Vojnovic. The Business Court dismissed without prejudice plaintiff's claims for constructive trust against both defendants.

Following the Business Court's order and opinion on defendants' motion for partial judgment on the pleadings, the claims that remained were: (1) plaintiff's claim

---

[2] Plaintiff also filed claims against Operating and Franchising for tortious interference with prospective economic advantage and sought a constructive trust. Later, plaintiff voluntarily dismissed all claims against both of those entities.

against the alleged partnership for judicial dissolution and an accounting and (2) plaintiff's direct claims against defendant Vojnovic for breach of the alleged partnership agreement, breach of fiduciary duty, and tortious interference with prospective economic advantage.

In September 2023, plaintiff and defendants filed cross-motions for summary judgment. In response, plaintiff filed a personal affidavit (the Cutter affidavit). Defendants filed a motion to strike portions of the Cutter affidavit. The Business Court heard the parties on the motions. During that hearing, plaintiff moved to submit an expert report of Thomas J. Molony (the Molony report). Defendants objected to the admission of the Molony report. The Business Court, disregarding the Molony report, correctly granted in part and denied in part defendants' motion to strike portions of the Cutter affidavit; granted defendants' motion for summary judgment; and denied plaintiff's motion for summary judgment.

Plaintiff timely appealed the Business Court's 24 January 2023 order and opinion granting partial judgment on the pleadings, and the Business Court's 16 February 2024 order and opinion striking portions of the Cutter affidavit, disregarding the Molony report, and granting summary judgment in favor of defendants. *See* N.C.G.S. § 7A-27(a)(2) (2023).

## III. Analysis

### A. 24 January 2023 Order and Opinion Granting Partial Judgment on the Pleadings

We begin our review with plaintiff's argument that the Business Court erred

by granting defendants' motion for partial judgment on the pleadings. "We review de novo a trial court's order granting a motion for judgment on the pleadings under Rule of Civil Procedure 12(c)." *Tully v. City of Wilmington*, 370 N.C. 527, 532 (2018).

> In considering a motion for judgment on the pleadings, all well pleaded *factual* allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. As with a motion to dismiss, the trial court is required to view the *facts* and permissible inferences in the light most favorable to the nonmoving party. A Rule 12(c) movant must show that the complaint fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar to a cause of action.

*Id.* (extraneities omitted) (emphases added). A judgment on the pleadings may only be granted if the moving party shows that no material issue of fact exists and that he is entitled to judgment as a matter of law. *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 682 (1987).

### 1. *Direct Claim of Tortious Interference Against Defendant Holdings*

We first examine plaintiff's direct claim of tortious interference against defendant Holdings, which plaintiff alleges was formed to be the legal buyer of Jib Jab. We conclude that the Business Court did not err in granting partial judgment on the pleadings in favor of defendant Holdings.

The Business Court noted that the only portion of plaintiff's pleading that suggests defendant Holdings was involved in any alleged interference with or diversion of the Jib Jab opportunity is in paragraph 51 of the complaint. Paragraph 51 of the complaint reads:

> Defendants are aware that [plaintiff] had identified the Jib Jab opportunity and engaged in initial negotiations with the [s]ellers, and that ARC held the [letter of intent] for the Jib Jab deal. Defendants nonetheless diverted the business opportunity away from [plaintiff] and ARC and to his own advantage, preventing [plaintiff] and ARC from closing on the deal with Jib Jab.

The Business Court reasoned, "Not only is Holdings accused jointly with Vojnovic, Operating, and Franchising in this allegation, but [plaintiff]'s allegation is also plainly conclusory and lacks any supporting facts." To support its conclusion that the direct claim against defendant Holdings for tortious interference must be dismissed, the Business Court relied on precedent from the Court of Appeals, *Radcliffe v. Avenel Homeowners Ass'n*, 248 N.C. App. 541, 572 (2016) (affirming the trial court's Rule 12(b)(6) dismissal of a tortious interference claim, because "conclusory allegations that track the elements of a [tortious interference] claim . . . are insufficient to state a legally sufficient claim").

We agree. On a motion for judgment on the pleadings, the trial court considers "all well pleaded *factual* allegations in the nonmoving party's pleadings." *Tully*, 370 N.C. at 532 (extraneities omitted) (emphasis added). The court does not consider conclusory allegations. As observed by the Business Court, plaintiff's pleading is "plainly conclusory and lacks any supporting facts." There were no facts pled to support the elements of tortious interference.

We adopt the reasoning of the Business Court and hold that conclusory statements tracking the elements of a claim alone are insufficient to withstand a

motion for judgment on the pleadings. This is in keeping with analogous Rule 12(b)(6) precedent from this Court. *See* N.C.G.S. § 1A-1, Rule 12(b)(6) (2023); *Button v. Level Four Orthotics & Prosthetics, Inc.*, 380 N.C. 459, 469 (2022) ("Plaintiff's conclusory allegation does little to comply with the specific pleading requirements of a tortious interference claim that prohibit general allegations of malice . . . ."); *Meyer v. Walls*, 347 N.C. 97, 114 (1997) (noting that conclusory allegations of willful and wanton acts by a public official will not be sufficient to withstand a Rule 12(b)(6) motion; the complaint must allege facts to support such a conclusion). Accordingly, we affirm the portion of the Business Court's order and opinion dismissing plaintiff's direct claim against defendant Holdings for tortious interference.

### 2. *Derivative Claims*

Next, we consider plaintiff's derivative claims on behalf of the alleged partnership. The Business Court dismissed plaintiff's derivative claims based upon its determination that plaintiff lacked standing to bring any derivative claims against defendants on behalf of the alleged partnership. We agree with the Business Court and take this opportunity to endorse its analysis.

"Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *In re A.S.M.R.*, 375 N.C. 539, 542 (2020) (extraneities omitted). Our Court has previously held that "one partner may not sue in his own name, and for his own benefit, upon a cause of action in favor of a partnership . . . [because] the partnership is the real party in interest." *Godwin v. Vinson*, 251 N.C. 326, 327 (1959)

(per curiam). Here, however, plaintiff does not assert a claim for his own benefit. Rather, plaintiff asserts a claim on behalf of the partnership itself.

Our State's statutory scheme provides for derivative lawsuits on behalf of corporations, N.C.G.S. §§ 55-7-40 to -50 (2023), limited liability companies, N.C.G.S. §§ 57D-8-01 to -07 (2023), and limited partnerships, N.C.G.S. §§ 59-1001 to -1006 (2023). The North Carolina Uniform Partnership Act (NCUPA), N.C.G.S. §§ 59-31 to -73 (2023), however, does not contain a comparable provision authorizing one general partner to assert a derivative action against another general partner on behalf of a general partnership. As the Business Court reasoned, when the legislature has included certain language in one section of a statute but omits it in another portion of the same statute, it is presumed that the omission was intentional. *See Russello v. United States*, 464 U.S. 16, 23 (1983).

Therefore, the legislature has demonstrated its ability to include a provision for derivative claims. In the NCUPA, however, there is no such provision. In this analogous situation, corporations, limited liability companies, limited partnerships, and general partnerships are all business organizations. Thus, it is appropriate for us to conclude that if the legislature wanted to provide partners in a general partnership with the opportunity to pursue derivative claims, then it would have enacted similar provisions in the NCUPA. This Court presumes such an omission by the legislature was intentional. *See id.* Without a statutory provision, there exists no standing for a general partner to bring a derivative claim against another general

partner.

Moreover, the NCUPA provides a remedy for a general partner who claims to be harmed by another general partner. Under the NCUPA, a general partner may make a claim for an accounting, as plaintiff has done here. *See* N.C.G.S. § 59-52 (2023); *Lichtenfels v. N.C. Nat'l Bank*, 260 N.C. 146, 148 (1963) ("All fiduciaries may be compelled by appropriate proceeding to account for their handling of properties committed to their care.").[3]

Accordingly, we affirm the portion of the Business Court's order and opinion dismissing plaintiff's derivative claims against defendants.

## B. 16 February 2024 Order and Opinion Granting Summary Judgment in Favor of Defendants

### 1. Motion to Strike

We begin our review of the Business Court's 16 February 2024 order and opinion, with defendants' motion to strike portions of the Cutter affidavit submitted for consideration on summary judgment. The Business Court granted defendants' motion in part. We affirm.

On appeal, this Court reviews the Business Court's order and opinion striking portions of an affidavit for abuse of discretion. *White v. White*, 312 N.C. 770, 777 (1985) ("It is well established that where matters are left to the discretion of the trial

---

[3] Regarding plaintiff's claims for constructive trust, the Business Court correctly dismissed those claims without prejudice so that plaintiff could pursue such a remedy if any claim justified such a remedy.

court, appellate review is limited to a determination of whether there was a clear abuse of discretion."); *see also Blair Concrete Servs., Inc. v. Van-Allen Steel Co.*, 152 N.C. App. 215, 219 (2002) (applying, as an appellate court, abuse of discretion review to a lower court's denial of a motion to strike an affidavit). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White*, 312 N.C. at 777.

The Business Court granted in part defendants' motion to strike portions of plaintiff's affidavit. Specifically, the Business Court granted defendants' motion to strike as to paragraphs three through seven and nine through fourteen. In relevant part, plaintiff's affidavit reads as follows:

> 3. I believed in the summer of 2019 that it would be possible to finance the purchase of the Jib Jab opportunity—both the restaurants and the underlying real estate.
>
> 4. I asked [defendant] Vojnovic . . . to enter into a partnership with me to pursue the Jib Jab opportunity not because I needed his assistance with financing, but because I needed someone with restaurant experience to ultimately handle the operations of the restaurants post-closing.
>
> 5. [Defendant] Vojnovic and I agreed on a partnership to pursue the acquisition and ownership of the restaurants and the real estate that comprised the Jib Jab opportunity on terms including . . . : (1) on general roles that I would be responsible for putting together the financing for the Jib Jab opportunity while [defendant] Vojnovic would be responsible for restaurant operations; and (2) that we would split profits equally.
>
> 6. The [p]artnership pursued various forms of

financing.

7.    In the summer of 2020, the [p]artnership focused on obtaining an SBA-guaranteed loan to close on the Jib Jab deal.

. . . .

9.    Before I could begin exploring other avenues of financing, [defendant] Vojnovic misappropriated the Jib Jab deal and informed me that he would sue me if I took any action in connection with that deal.

10.    As of November and December 2020, the [p]artnership was capable of closing on the acquisition of the Jib Jab opportunity. The [p]artnership had various financing options the [p]artnership was able to pursue, all of which I believe would have been sufficient to fund the closing of the deal.

11.    As of November and December 2020, I also was capable of closing on the acquisition of the Jib Jab opportunity. I had various financing options I was able to pursue, all of which I believe would have been sufficient to fund the closing of the deal.

12.    Specifically, I had various investors and friends with the wherewithal and inclination to provide me a private loan. Those same investors could also have potentially partnered with me on the acquisition and received an equity interest instead of [defendant] Vojnovic.

13.    I also had sufficient liquid assets in my own name and/or in the name of companies that I wholly owned and controlled to have been able to fund the deal with cash if necessary.

14.    I am confident I could have closed on the Jib Jab opportunity but for [defendant] Vojnovic's misappropriation of that opportunity to his own benefit.

When opposing summary judgment, a party may not rest upon his pleadings.

N.C.G.S. § 1A-1, Rule 56(e) (2023). Affidavits submitted in response to a motion for summary judgment "must set forth specific *facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id.* (emphasis added). "[A]ffidavits shall be made on personal knowledge[ and] shall set forth such *facts* as would be admissible in evidence . . . ." *Id.* (emphasis added).

In partially granting defendants' motion to strike, the Business Court reasoned that the allegations in paragraph three and paragraphs ten through fourteen of plaintiff's affidavit lacked any factual support and therefore must be stricken. In doing so, the Business Court relied on Court of Appeals precedent. While not controlling, we find these Court of Appeals cases persuasive. We agree with and adopt the Business Court's reasoning here and discuss each allegation in turn.

"Rule 56(e) clearly precludes any party from prevailing against a motion for summary judgment through reliance on such conclusory allegations unsupported by facts." *Lowe v. Bradford*, 305 N.C. 366, 371 (1982) (quoting *Nasco Equip. Co. v. Mason*, 291 N.C. 145, 152 (1976)); *see also Frank H. Conner Co. v. Spanish Inns Charlotte, Ltd.*, 294 N.C. 661, 675 (1978) (explaining that a party opposing a motion for summary judgment "must come forward with facts, not mere allegations").

Paragraph three of plaintiff's affidavit merely states that he "believed . . . that it would be possible to finance the purchase of the Jib Jab opportunity." This does not even purport to be a fact—it is what the language plainly says that it is—a belief. *See*

*Anton v. Anton*, 278 N.C. App. 150, 161 (2021) (concluding that an affidavit stating the "[p]laintiff's bare assertion of a belief" was "not based on any specific facts" and was therefore "insufficient"); *Rankin v Food Lion*, 210 N.C. App. 213, 218 (2011) ("[A]ffidavits . . . which set forth facts which would not be admissible in evidence should not be considered when passing on the motion for summary judgment." (quoting *Wein II, LLC v. Porter*, 198 N.C. App. 472, 476–77 (2009))); *Lemon v. Combs*, 164 N.C. App. 615, 622 (2004) ("Statements in affidavits as to opinion, belief, or conclusions of law are of no effect . . . ." (quoting 3 Am. Jur. 2d *Affidavits* § 13)).

Paragraphs ten through fourteen also fail to offer any facts. Paragraphs ten and eleven, declaring that there were "various financing options" available, do not identify any such financing options. Nor does plaintiff's affidavit identify the "various investors and friends with the wherewithal and inclination to provide [plaintiff] a private loan" or the "sufficient liquid assets in [his] own name and/or in the name of companies that [plaintiff] wholly owned and controlled," referenced in paragraphs twelve and thirteen. Paragraph fourteen merely announces that plaintiff felt "confident" that he would have purchased Jib Jab if defendant Vojnovic had not. *See Hylton v. Koontz*, 138 N.C. App. 629, 634 (2000) ("Our courts have held affirmations based on personal awareness, information and belief, and what the affiant thinks do not comply with the 'personal knowledge' requirement of Rule 56(e)." (extraneities omitted)). Instead of facts, the affidavit contains plaintiff's opinions and conclusory statements. *See United Cmty. Bank (Ga.) v. Wolfe*, 369 N.C. 555, 559–60 (2017)

(reasoning that the defendants' affidavit stating their beliefs was merely a conclusory statement that did not create a genuine issue of material fact to survive summary judgment).

The Business Court also struck paragraphs four through seven, referring to the association between plaintiff and defendant Vojnovic as a "partnership." Additionally, the Business Court struck paragraphs nine and fourteen of plaintiff's affidavit, alleging that defendant Vojnovic "misappropriated" the Jib Jab opportunity. We agree with the Business Court's reasoning and adopt it here.

In the affidavit, the terms "partnership" and "misappropriated" were inadmissible legal conclusions which the court cannot consider on summary judgment. *See, e.g.*, *Singleton v. Stewart*, 280 N.C. 460, 467 (1972) (concluding the evidence in an affidavit was incompetent, because an "affiant's legal conclusion [is] not a fact 'as would be admissible in evidence' " (quoting N.C.G.S. § 1A-1, Rule 56(e))). A legal conclusion is a "statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result." *Legal Conclusion, Black's Law Dictionary* (12th ed. 2024). Paragraphs four through seven of the affidavit contain no facts to support elements amounting to a partnership between plaintiff and defendant Vojnovic. Paragraphs nine and fourteen do not contain any facts to support the elements of misappropriation of business opportunity. Therefore, the Business Court's decision to strike the inadmissible legal conclusions was not "manifestly unsupported by reason." *See White*, 312 N.C. at 777.

In summary, paragraph three, paragraphs four through seven, and paragraphs nine through fourteen of plaintiff's affidavit did not set forth "specific *facts*" for the Business Court to consider under Rule 56(e). *See* N.C.G.S. § 1A-1, Rule 56(e) (emphasis added). Thus, plaintiff has not shown that the Business Court's decision to strike said paragraphs of plaintiff's affidavit "was so arbitrary that it could not have been the result of a reasoned decision." *White*, 312 N.C. at 777. Accordingly, we affirm the portion of the Business Court's order and opinion granting in part defendant's motion to strike.

### 2. *Business Court's Decision to Disregard the Molony Report*

We next consider the Business Court's decision to exclude, upon defendants' motion, the purported expert report—the Molony report. The Molony report was introduced at the hearing on the cross-motions for summary judgment, and defendants objected. The Business Court disregarded the report, reasoning that it amounted to an additional brief surpassing the briefing word limit and purported to offer an expert opinion of the law as applied to the particular facts of the case.

Importantly, the Molony report is not a sworn affidavit. Rule 56 is clear: summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2023); *see also Da Silva v. WakeMed*, 375 N.C. 1, 10 (2020). The plain language of Rule 56 does not include

unsworn "expert witness reports" or "reports" as evidence to be considered on a motion for summary judgment. Therefore, it was proper for the Business Court to disregard the Molony report. Accordingly, we affirm the portion of the Business Court's order and opinion disregarding the Molony report.

### 3. Cross-Motions for Summary Judgment

"On appeal, an order allowing summary judgment is reviewed *de novo*." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470 (2004). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [the movant] is entitled to a judgment as a matter of law.' " *Da Silva*, 375 N.C. at 10 (quoting N.C.G.S. § 1A-1, Rule 56(c) (2019)). A genuine issue is one that is "supported by substantial evidence," *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681 (2002), and "[a]n issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action," *id.* (alteration in original) (quoting *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518 (1972)). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Belmont Ass'n v. Farwig*, 381 N.C. 306, 310 (2022) (quoting *Dalton v. Camp*, 353 N.C. 647, 651 (2001)).

Following the Business Court's 24 January 2023 order and opinion regarding partial judgment on the pleadings, addressed above, plaintiff and defendants filed cross-motions for summary judgment on the remaining four claims: (1) plaintiff's claim for judicial dissolution and an accounting of the alleged partnership; (2) plaintiff's direct claim against defendant Vojnovic for breach of the alleged partnership agreement; (3) plaintiff's direct claim against defendant Vojnovic for breach of fiduciary duty; and (4) plaintiff's direct claim against defendant Vojnovic for tortious interference with prospective economic advantage. The first three claims are dependent upon the existence of a partnership.

The Business Court correctly granted defendants' motion for summary judgment. However, the Business Court erred, partially, in its reasoning concerning the partnership dependent claims. Thus, we modify and affirm the portion of the Business Court's order and opinion granting summary judgment in favor of defendants on the partnership dependent claims, and we affirm the portion of the Business Court's order and opinion granting summary judgment on the tortious interference claim.

### a. *Partnership Dependent Claims*

The NCUPA defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." N.C.G.S. § 59-36(a) (2023). "A contract, express or implied, is essential to the formation of a partnership." *Eggleston v. Eggleston*, 228 N.C. 668, 674 (1948) (quoting 40 Am. Jur. *Partnership* § 20). "A

partnership may be formed by an oral agreement." *Campbell v. Miller*, 274 N.C. 143, 149 (1968). Moreover, "[e]ven without proof of an express agreement to form a partnership, a voluntary association of partners may be shown by their conduct." *Potter v. Homestead Pres. Ass'n*, 330 N.C. 569, 576 (1992).

The Business Court concluded that, because plaintiff and defendant Vojnovic never agreed to the terms and sources for the financing of Jib Jab, or to share losses jointly, there was no partnership. The Business Court is correct that no partnership existed here. However, the Business Court erred, in part, in its reasoning as to why no partnership was formed.

The Business Court determined that to form a partnership, prospective partners must not only agree to share profits but must also explicitly agree on how to share losses. However, a failure to agree on how to share losses does not defeat the formation of a partnership. *See* N.C.G.S. § 59-48 (2023). Specifically, the NCUPA provides that, "subject to any agreement between them," partners in a partnership "must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits." N.C.G.S. § 59-48(1). That is to say, the statutorily provided default is that shared losses match shared profits. *See id.* This reflects how business formation often unfolds—those aspiring to start a business are frequently singularly focused on discussing the profits they hope to earn and do not consider the possibility that their endeavor will instead result in loss. This common oversight does not prevent the formation of a partnership. *See Longley*

*Supply Co. of New Bern v. Styron*, 26 N.C. App. 55, 57 (1975). So long as an agreement is established to share the profits of a partnership, so too is an agreement to share the losses.[4]

The Business Court relied on *Johnson v. Gill*, 235 N.C. 40, 44–45 (1952), in making its determination that no partnership existed here. However, *Johnson* is distinguishable. This Court's determination that no partnership existed in *Johnson* was not based upon the lack of an explicit agreement for sharing of losses. Rather, *Johnson* was decided based upon the fact that payments to the alleged partner-defendant were not made as a share in profits but were payments for the lease or sale of a tractor. *Id.* at 45; *see also* N.C.G.S. §§ 42-1, 59-37(4)(a) (2023).

Moreover, the *Johnson* language is not in conflict with the NCUPA as analyzed above. The Business Court relied on the following *Johnson* language: "To make a partnership, two or more persons should combine their property, effects, labor, or skill in a common business or venture, *and* . . . share the profits and losses in equal or specified proportions . . . ." *See Johnson*, 235 N.C. at 44–45 (emphasis added)

---

[4] Notably, at oral argument, defendants cited *Longley Supply Co. of New Bern v. Styron*, 26 N.C. App. 55 (1975), to support their argument that subsection 59-48(1) applies only after surpassing a threshold determination that a partnership existed. *See* Oral Argument at 50:00, *Cutter v. Vojnovic* (No. 229A24) (Feb. 25, 2025). Defendants are mistaken. As Justice Earls noted at oral argument, defendants' interpretation results in a circular analysis. *Id.* at 51:00. Under defendants' interpretation, there must be an agreement as to profits and losses before a partnership can exist, and subsection 59-48(1) only applies after a partnership is formed. If that were the case, there would never be a circumstance where subsection 59-48(1) would apply. As Justice Allen pointed out during oral argument, defendants' interpretation would render subsection 59-48(1) mere surplusage. *Id.* at 53:35.

(quoting *Gorham v. Cotton*, 174 N.C. 727, 729 (1917)). This language simply reiterates that the profits and losses will be shared either equally *or as specified*—if losses are not specified, the default is provided by subsection 59-48(1). However, to the extent that *Johnson* can be interpreted as requiring a specific agreement on losses in order for a partnership to be formed, it is overruled.

Despite the Business Court's misinterpretation of *Johnson*, the Business Court ultimately reached the correct conclusion: no partnership exists. The Business Court reasoned that undisputed evidence demonstrated that plaintiff and defendant Vojnovic never agreed upon the terms to obtain financing for the Jib Jab purchase. As noted by the Business Court, financing was a critical term of any potential partnership here, because, without it, plaintiff and defendant Vojnovic would not be able to purchase Jib Jab. To that point, plaintiff and defendant Vojnovic were never able to agree on the financing terms, with the same lender, at the same time. Thus, there was never an agreement on a material term of the purported partnership agreement—financing. As the Business Court stated, the parties only "hoped to purchase Jib Jab together."

Having never agreed on how to finance the purported partnership business, plaintiff and defendant Vojnovic were never even on their way toward co-ownership and sharing profits. *See, e.g.*, *Miller v. Rose*, 138 N.C. App. 582, 590 (2000) (concluding that financing was essential to the contemplated transaction, and thus no partnership existed between alleged partners who did not agree to financing);

*Compton v. Kirby*, 157 N.C. App. 1, 11 (2003) ("A partnership may be inferred from all the circumstances, so long as the circumstances demonstrate a meeting of the minds with respect to the material terms of the partnership agreement."). A lack of co-ownership is fatal to plaintiff's claim that a partnership existed. *See* N.C.G.S. § 59-36(a).

Furthermore, a review of the undisputed evidence reveals no indicia of a partnership. Plaintiff and defendant Vojnovic never registered a partnership name, made capital contributions to a partnership entity, set up bank accounts for a purported partnership, or filed partnership tax returns. Additionally, Holdings, the entity intended by the parties to be the legal owner of Jib Jab, was established as a limited liability company—not as a general partnership. This distinction indicates a desire to pursue a business relationship with the protections of a limited liability company. Lastly, it is of no legal import whether plaintiff and defendant Vojnovic ever referred to themselves as partners, because a court is "not bound by the labels which have been appended . . . by the parties." *See Branch Banking & Tr. Co. v. Creasy*, 301 N.C. 44, 53 (1980). It is "the substance, not the form, of a transaction [that is] controlling." *Id.*

The undisputed evidence shows that no partnership existed between plaintiff and defendant Vojnovic as related to the Jib Jab opportunity. Thus, the Business Court did not err in granting summary judgment in favor of defendants on plaintiff's claim for judicial dissolution and an accounting of the alleged partnership, plaintiff's

direct claim against defendant Vojnovic for breach of the alleged partnership agreement, and plaintiff's direct claim against defendant Vojnovic for breach of fiduciary duty. Accordingly, this Court modifies and affirms the Business Court's order and opinion on this issue.

### b. *Plaintiff's Direct Claim Against Defendant Vojnovic for Tortious Interference with Prospective Economic Advantage*

The Business Court granted summary judgment in favor of defendant Vojnovic on plaintiff's claim for tortious interference with prospective economic advantage. We agree with the Business Court's reasoning and adopt it here.

Tortious interference with prospective economic advantage

> arises when a party interferes with a business relationship by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights.

*Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 701 (2016) (extraneities omitted). To be successful in such a claim, a plaintiff "must produce evidence that a contract would have resulted but for a defendant's malicious intervention." *Id.*

Plaintiff has presented no admissible evidence that he could have purchased Jib Jab but for defendant Vojnovic's interference. *See* N.C.G.S. § 1A-1, Rule 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such *facts as would be admissible in evidence . . . .*" (emphasis added)). Plaintiff

admitted, in his deposition, that he "did not go out and try to find other sources of capital" after failing to secure the SBA loan. Plaintiff's affidavit and deposition testimony offer mere speculation and conjecture that he would have been able to obtain financing to purchase Jib Jab. As this Court explained above, such portions of plaintiff's affidavit were correctly stricken by the Business Court, because "Rule 56(e) clearly precludes any party from prevailing against a motion for summary judgment through reliance on such conclusory allegations unsupported by facts." *See Lowe*, 305 N.C. at 371 (quoting *Nasco Equip. Co.*, 291 N.C. at 152).

Further, plaintiff's claim for tortious interference conflicts with the undisputed evidence that plaintiff needed an operator to run the restaurant. The undisputed evidence shows that plaintiff did not possess the skills to operate a restaurant business or the desire to learn how to do so. The undisputed evidence also shows that plaintiff did not know anyone other than defendant Vojnovic who possessed the qualifications to operate a restaurant business.

Thus, plaintiff has not offered any competent evidence that "a contract would have resulted but for a defendant's malicious intervention." *See Beverage Sys. of the Carolinas, LLC*, 368 N.C. at 701. Thus, the Business Court did not err by entering summary judgment for defendant Vojnovic on plaintiff's tortious interference claim. Accordingly, we affirm the Business Court's order and opinion on this issue.

## IV.    Conclusion

For the above stated reasons, we affirm the Business Court's 24 January 2023 order and opinion on defendants' motion for partial judgment on the pleadings. We also modify and affirm, for the above stated reasons, the Business Court's 16 February 2024 order and opinion on cross-motions for summary judgment and defendants' motion to strike parts of the Cutter affidavit.

MODIFIED AND AFFIRMED.